415 So.2d 546 (1982)
Shelton ROBERTS
v.
ROLENE CORPORATION.
No. 14887.
Court of Appeal of Louisiana, First Circuit.
May 25, 1982.
*547 Michael V. Clegg, Baton Rouge, for plaintiff-appellee Shelton Roberts.
Michael R. Connelly, Baton Rouge, for defendant-appellant Rolene Corp.
Before LOTTINGER, EDWARDS and SHORTESS, JJ.
SHORTESS, Judge.
Plaintiff, Shelton Roberts, signed a purchase agreement on June 1, 1979, wherein defendant, Rolene Corporation, agreed to construct a home and pool for the agreed price of $95,000.00. A subsequent purchase agreement was signed on September 5, 1979, which raised the price to $105,000.00, to cover the cost of a solar heat system.
Although the house was constructed, the sale was never completed because at the closing on October 17, 1979, the parties could not agree on the actual price. Plaintiff was prepared to pay $105,000.00, plus approximately $7,000.00 or $8,000.00 for additions and extras which he had authorized. Defendant wanted approximately $140,000.00, claiming the extra cost was due to several alterations and additions requested and approved by plaintiff.
The home was subsequently destroyed by fire. Defendant had insurance which paid $70,000.00. After the fire, the home was rebuilt and sold by defendant for a disputed amount ranging between $115,027.66 and $135,527.66.
Plaintiff filed suit, claiming that defendant breached the purchase agreement and asked for damages of $12,000.00. Plaintiff had paid $10,000.00 to purchase the lot and had expended $2,000.00 on glass doors for the house.
Defendant denied the allegations and charged that plaintiff breached the contract by refusing to buy the home and refusing to pay for the extras. Defendant reconvened claiming damages of $161,348.89 plus a daily interest charge of $45.00 on the construction loan and reasonable attorney's fees in the amount of $5,000.00.
The trial judge signed a judgment in favor of plaintiff for $12,063.82, plus legal interest and costs and dismissed defendant's reconventional demand. From this judgment, defendant appeals, urging that the trial judge was manifestly wrong in failing to award damages to it for plaintiff's alleged breach of contract and in awarding plaintiff $12,063.82. Plaintiff answered the appeal alleging the trial judge erred in failing to award attorney's fees under a specific provision in the contract.
The purchase agreement for $105,000.00, signed by both parties on September 5, 1979, reveals the following handwritten language:
House to be erected by Rolene Corp. using plan X-XXXX-XX revised and attached and the pool portion of plan 79-5306B revised and attached. $10,000.00 lot payment has been made by purchaser to seller *548 and is included in the $105,000.00 sales price.
On the reverse side under "OTHER CONDITIONS, Addendum 2," it is stated:
The undersigned Sellers and Purchasers hereby further agree to the following:
Sales price on reverse side is based on pool & pool covered area to be performed on a cost plus 10% basis with savings returned to buyer. $10,000 paid to builder for lot is part of sales price, on reverse side. All additional extras and changes to be paid by buyer.
Plaintiff stated that he was to pay $105,000.00 for the lot, house, pool and pool covered area and was to additionally pay for any extras he authorized. This was the interpretation adopted by the trial judge. That finding may not be set aside absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Mr. Carlton H. McConnell, defendant's witness, was the realtor who drafted the original agreement for $95,000.00. When questioned by the court, he testified as follows:
Q Was it your understanding that even with the cost plus portion of the contract for the pool and the covered area that the total price was still not to exceed, no matter what, it was not to exceed $95,000.00?
A Yes, sir, per the plans and specs which were referred to in the contract and made a part of by reference.
Q But the pool and the covered area is definitely a part of the $95,000?
A Yes, sir, that's correct.
Q All right. Thank you.
Mrs. Allalee G. Thibodeaux, real estate agent for plaintiff, testified as to the original and subsequent purchase agreements:
Q And does the contract provide for a sale price?
A Yes, it does.
Q Do you know how this sale price was reached, of $95,000?
A The $95,000 was to be the price of the house, the pool and covered area, and the lot.
Q And do you know exactly what figures they took in to compute the $95,000?
A As I recall, they had set about $63,000 for the house and$63,000 for the house and lot; either a lot of Mr. Griffis that he owned or one that Mr. Roberts had under consideration, and the pool and covered area.
Q And how much did they figure for the pool and pool covered area?
A About $29,000.
Q And why is it then if you add $63,000 plus $29,000 that comes to $92,000: Why was the contract written for $95,000?
A The pool was to be on a cost plus basis with a possible return of savings because they estimated about $29,000 but they had written this at $95,000 to fully cover, to give some leverage, and then with a savings on the pool to be returned to the buyer.
Q Was this pool, house and lot supposed to exceed the sum of $95,000?
A This was what they estimated, $95,000 would be ample coverage.
And further,
Q And this next one is Joint-3?
A That's the final contract written just shortly before closing.
Q Okay. And what is the date of this particular contract when it was written?
A We put the date of June simply to hold a line. It was actually drawn about the 1st of October.
Q Okay. And what is the sales price on this house?
A Was $105,000.
Q Why the difference between $95,000 on the first and second purchase agreement to $105,000 on the third?
A Because the original plan did not cover solar. Mr. Roberts wanted to go solar; they had gotten the figures;

*549 Mr. Roberts had gotten these himself, and these would cover the costs of the addition of the solar.
The record amply supports the trial judge's conclusion that the cost of the lot, home, pool, pool covered area and solar heat system was included in the sales price of $105,000.00, and that the buyer was liable only for any extras which he authorized.
At the closing, plaintiff was prepared to pay the sales price and extras amounting to approximately $7,000.00 or $8,000.00. Defendant insisted that plaintiff had approved approximately $35,000.00 in extras. Plaintiff requested receipts and validation of these alleged expenditures; however, defendant was only able to present a list of the items and could not produce invoices to document its claims.
At trial, plaintiff admitted that he approved some changes and/or additions, including a heater for the pool area (approximately $400.00), excess on the allowance for the carpet, vinyl and wallpaper (approximately $525.00), a bathhouse (approximately $1500.00-$1800.00), and ceiling fans (approximately $2200.00-$2300.00). The burden was on defendant to prove the authorization and costs of any extras above those admitted. Louisiana Civil Code Art. 2763 provides:
When an architect or other workman has undertaken the building of a house by the job, according to a plot agreed on between him and the owner of the ground, he can not claim an increase of the price agreed on, on the plea of the original plot having been changed and extended, unless he can prove that such changes have been made in compliance with the wishes of the owner. (Emphasis ours.)
Defendant offered no proof of a written authorization by plaintiff for the alleged extras. There was some testimony regarding plaintiff's visits to the site and requests for changes. However, most of this testimony concerned work which plaintiff admitted authorizing, or involved the pool area which was part of the agreement. Plaintiff cannot be held liable for extras on the theory that they were made with his knowledge and without objection, where the evidence establishes a reasonable ground for the belief that the extras were contemplated by the contract. Bert's Boat Works, Inc. v. Cuccia, 278 So.2d 134 (La. App.4th Cir. 1973); Bagur v. Power, 156 So.2d 248 (La.App.4th Cir. 1963).
Even if the owner does consent to changes, the contractor has the burden of proving that extra work and extra material were furnished and its value. Gulotta v. Swinney, 143 So.2d 775 (La.App.1st Cir. 1962). Defendant presented invoices attempting to prove its expenses for the extras. However, it was never able to separate the primary costs incurred under its obligation to build the house, pool, etc., from the alleged extras. The invoices merely showed the total amount expended for various items and did not satisfactorily separate the primary work from the extra work.
We find that defendant did not sustain its burden of proving the authorization or expense of the alleged extras, and it breached its obligation to sell the home on October 17, 1979, for the agreed price of $105,000.00, plus extras approved by plaintiff.
Plaintiff has answered the appeal, claiming attorney's fees under the following provision of the purchase agreement:
Time is of the essence in this contract. In the event of default by either party, the non-defaulting party shall have the right to demand and sue for specific performance and/or damages. The defaulting party under this contract shall also be liable for the REALTOR'S fee and all attorney's fees and other costs incurred in the enforcement of all rights under this contract.
Because of this express provision, and our finding that it was defendant who breached the agreement, we feel that plaintiff is entitled to attorney's fees in the amount of $2,000.00.
For all of the foregoing reasons, the judgment of the trial court is affirmed and *550 amended in accordance with the opinion set forth herein. All costs of this appeal are assessed to defendant-appellant.
AFFIRMED AND AMENDED.