GARRISON, Judge.
This is an appeal from a judgment of the Civil District Court rendered June 26, 1985 and providing as follows:
“IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, L.G.W., Inc., and against the defendants, Mrs. Darcy P., wife of and Kerry P. Redmann, in the sum of $3,977.00 plus interest from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, L.G.W., Inc., and against the defendants, Mrs. Darcy P., wife of and Kerry P. Redmann, for those amounts paid out hereafter to Bernard Lumber Co., Masonry Products, Helm Paint Co., George’s Wallcovering, and Decorators Choice, not to exceed the sum of $5,663.20 plus interest.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiffs in reconvention, Darcy P. Redmann and Kerry P. Redmann, and against the defendant in reconvention, L.G.W., Inc., in the sum of $3,377.52 plus interest from date of judicial demand until paid and for all costs.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all other demands are hereby dismissed.”
The trial court provided the following written reasons for judgment:
“Mr. Willis of L.G.W. Inc., and Mr. Redmann entered into a cost plus contract for the construction of a house according to plans and specifications.
L.G.W., Inc., was to be paid the sum of $6,000.00 for his work. Mr. Willis paid some of the bills, Mr. Redmann paid some, and some are still owed to the suppliers.
L.G.W., Inc., contends that Three Thousand Dollars is still due on the supervision fee, as well as money expended for labor and material and debts incurred for labor and material. Plaintiff contends that those are paid are:
Mike Catalonato $376.00
Clem Butler 581.00
Plaintiff contends that those still due are:
Bernard Lumber Co. 2784.82
Masonry Products 2469.52
Helm Paint Co. 157.50
George’s Wallcovering 165.40
Decorator’s Choice 85.96
The defendant contends that the limit of his liability is $55,000.00 because of the contract.
He further contends that:
1. He is entitled to the cost of demolition and construction of a new retaining wall.
2. The cost of the carport.
3. Painting — touchup on the walls.
4. Cost of guttering around the house.
5. Cost of interim financing due to delay in construction.
The Court finds the following:
This was a cost plus contract. L.G.W. Inc., is entitled to Judgment against Mr. *386 Redmann for his supervision fee, the costs paid to Mr. Catalonato and Mr. Butler. The plaintiff is further entitled to Judgment for those liabilities which are contingent, and to be collected only in the event of the payment of these debts by L.G.W., Inc.
This Court finds that because this was a cost plus contract, the exposure of Mr. Redmann is not limited to $55,000.00.
The Court finds the retaining wall, the carport and the guttering around the house were not included in the initial contract.
The plaintiff in reconvention, Mr. Red-mann, can not, therefore, recover for the guttering, nor the carport.
A separate problem is presented by the retaining wall.
There was a separate agreement to construct a retaining wall not to exceed a cost of $1,000.00.
It is unfortunate that Mr. Willis did not refuse (knowing that a proper concrete retaining wall could not be built for this price) or have Mr. Redmann execute a waiver, or hold harmless agreement.
However, a workman is responsible for his work, and in this case the work is useless and must be demolished.
Mr. Redmann is entitled to the cost of this demolition.
However, he is not entitled to the construction of a proper retaining wall, for which he neither contracted nor paid.
The Court finds the cost of demolition as follows:
Remove existing fence 120.00
Knock down wall 230.00
Haul off debris 720.00
Replace fence 802.50
Overhead and profit 561.60
The Court finds that Mr. Redmann is entitled to recover the cost of touching up the walls, in the sum of $300.00.
The Court finds that Mr. Redmann is entitled to recover the additional cost of interim financing caused by delay, in the amount of $643.42.
All other claims are denied.”
L.G.W., Inc.’s President, Larry G. Willis and the Redmanns executed the following construction contracts:
“CONSTRUCTION AGREEMENT
BETWEEN
L.G.W., INC. (CONTRACTOR)
AND
KERRY AND DARCY REDMANN (PURCHASERS)
L.G.W., Inc. proposes to construct a single family residence of approximately 2100 square feet of living area, in accordance with the attached Plans and Specifications.
Dwelling to be constructed on 50' X 100' lot in Spanish Fort Subdivision, Square 4, Lots 46 and 47 (Aviators Street) bearing municipal number 1321.
Total cost of construction, including closing cost, not to exceed $55,000.
Agreed upon this date, June 3, 1982.
/s/ Larry Willis, President /s/ DARCY P. REDMANN
L.G.W., Inc.
la/ KERRY P. REDMANN, JR.
(emphasis added).
AGREEMENT
JUNE 3, 1982
*387 We, Kerry and Darcy Redmann hereby agree to pay L.G.W., Inc. a supervisory fee of Six Thousand Dollars over and above the cost of Construction of our home on Aviators Street.
Payment will be as follows:
1st Payment of $3,000 to be paid when house is framed, bricked and sheetrocked.
2nd Payment of $3,000 to be paid when house is accepted by owners and is ready to move into.
It is understood that L.G.W., Inc, will do everything in its power to keep the cost of construction within the discussed budget and it is hereby agreed that the total cost including closing cost and above supervisory fee, will not exceed $55,000.
Agreed upon this date, June 3, 1982.
/s/ LARRY WILLIS, PRESIDENT /s/ DARCY P. REDMANN
Is/ KERRY P. REDMANN, JR.”
(emphasis added).
All parties agree that Willis had presented the Redmanns with an estimate of $47,-466.60:
“Date of Application:
Application No.: Kerry Redmann
For Period From:
To: 1321 Aviators
Application is made for payment as hereinafter shown:
Item Contract Previous
No. Description of Work Amount Payments
A_B_C D
1 Plans and Blue Prints 50.00
2 Building Permit 400.00
3 Finished Grade Lot 1000.00
4 Piling 1950.00
5 • Forming Lumber 400.00
6 Forming Labor 324.00
7 Slab Fill .
8 Plumbing 5000.00
9 Digging and Pouring 604.80
10 Termiting 150.00
11 Visqueen 74.00
12 Kelly Slab 900.00
13 Concrete Yards 2314.00
14 Frame Lumber 4736.00
15 Carpentry 2560.00
16 Windows 639.40
17 Heat & Air Condition W 2550.00
18 Electrical 2500.00
19 Insulation 800.00
20 Bath Heaters-Roof Vent 225.00
21 Roofing Material 826.26
22 Roofing Labor 330.00
*388 Item Contract Previous
No. Description of Work Amount Payments
^A_B_C D
23 Sheet Rock Material 823.20
24 Sheet Rock Labor 432.00
25 Brick & Material 1598.40
26 Brick Labor 1520.00
27 Drywall 864.00
28 Millwork 2484.00
29 Painting 1728.00
30 Trimming 984.00
31 Cabinets & Vanity 1500.00
32 Formica Tops 350.00
33 Tile or Marble 535.00
34 Wallpaper & Labor 336.00
35 Electrical Fixtures 400.00
36 Appliances 750.00
37 Flooring 552.00
38 Carpet 2280.00
39 Mirrors 120.00
40 Flat Work Labor 295.00
41 Flat Work Concrete 574.00
42 Garage Door -
43 Fireplace 900.00
44 Iron Work -
45 General Cleaning 400.00
46 Final Grading 125.00
47 Insurance .
48 Utilities Service 50.00
49 Supervision 6000.00
50 Miscellaneous
51 Survey 125.00
52
47,466.50”
Admitted into evidence were all checks issued by the Redmanns to Willis, L.G.W., Inc. and various suppliers and subcontractors. The checks totaled $48,278.72. Additionally, the closing costs totaled $2,320.00. (Total: $50,598.72).
A dispute arose when Willis purchased two $400 ceiling fans from Fenasci Fixtures. The Redmanns told him the fans were too expensive and told Willis to return the fans or use them on somebody else’s job. They refused to reimburse Willis for the cost of the fans. Willis refused to pay Fenasci Fixtures, where he had an open account. Fenasci sued the Redmanns in First City Court. A default judgment was rendered in the amount of $1,618.16. That judgment has been paid by Redmann. (Total: $52,216.88).
On July 1, 1983, Willis filed suit claiming he was owed an additional $12,417.07. This second suit seeks to relitigate the Fenasci ceiling fan amounts previously adjudicated, among other amounts owed by Willis to other suppliers on the job.
On appeal, appellants seek to have the $55,000.00 limitation enforced, seek to enforce dismissal under C.C.P. Art. 425 and 531, and argue that the trial court erred on the issue of the retaining wall.
*389 In Amundson, Inc. v. Hoppmeyer, 442 So.2d 1254 (La.App. 5th, 1983), the court confronted a similar case:
“The parties to this suit entered into a written contract for construction of a home. Pertinent here is the clause which states:
[Allen E. Amundson, Inc. and Allen E. Amundson, Jr.] propose to furnish all labor, materials, equipment, filing and permit fees to build and complete the residence as per plans and specs [sic] for the sum of $72,000....
All parties agree that during negotiations as well as at the signing of the contract, it was their understanding that the job would be done on a 10% cost-plus basis up to $71,000, and in the event the total was less than the stated price, the difference would accrue to the Hoppmey-ers. The Hoppmeyers further testified that they were assured by Amundson that the cost could not possibly go over the stated price. Amundson similarly testified that had the original plans and specifications been followed, he could have completed the job within the contract price. There is further agreement that the Hoppmeyers did authorize some changes in the plans.
* # * # * $
The general rule as to written contracts is that parole evidence cannot be admitted to vary their terms. Civil Code Art. 2676. The exceptions to this rule are where a party alleges fraud, mistake, illegality or want or failure of causa, or where the written agreement is ambiguous, Mott v. Phillips, 372 So.2d 223 (La.App. 3rd Cir.1979). Here, none of the above exceptions are applicable. The dispute as to the nature of the agreement is simply whether it is a fixed price or a cost-plus contract. The document itself is unambiguous. It is clearly a fixed-price building agreement for $71,000, and we so find.
The legal consequences of such a contract are that the builder will only recover the fixed price for completion of the work, regardless of his actual costs, unless the buyer makes changes in the plans and specifications which increase the final cost, Civil Code Art. 2764. Of course, the builder bears the burden of proving both the buyer’s authorization for, and the cost of any changes made. Roberts v. Rolene Corp., 415 So.2d 546 (La.App. 1st Cir.1982).”
(at 1255-1256) (emphasis supplied).
Like the Amundson case, in the instant case no party has alleged fraud, mistake, illegality or want or failure of causa or that the contract is ambiguous. Like the Amundson case, the contract in the instant case is clearly a fixed-price building agreement for $55,000.00. Accordingly, the trial court committed an error of law in finding that the contract was a cost-plus contract. See also: C.C. Art. 2763.
The instant case is not one in which the owner continually made increasingly expensive changes to the original architectural plans. In the instant case no changes were made at all.
As a fixed-price agreement, Mr. Redmann’s liability is limited to $55,000.00 of which he has already paid $52,216.88, leaving a balance of $2,783.12. Accordingly, the largest judgment which could be rendered against the Redmanns under the construction contract is $2,783.12. The trial court erred in failing to enforce the $55,000.00 ceiling.
In the instant case, none of the architectural plans for the house were changed. In addition, however, Willis agreed to also construct a retaining wall. The trial court correctly found that “there was a separate agreement to construct a retaining wall not to exceed a cost of $1,000.00.”
The trial court correctly found that the retaining wall built by Willis was useless and that Redmann was entitled to the cost of demolition of the wall.
Finally, Willis owes various sums to suppliers Bernard Lumber Co., Masonry Products, Helm Paint Co., George’s Wallcover-ing, Decorator’s Choice, allegedly for supplies purchased by him on open account for the Redmann job. The Redmanns argued *390 not only that materials never used in their home were being charged to them by Willis, but also materials used in another job on Bentley Street in New Orleans East. In addition they argued that in some instances they were being charged for twice as many items as were being used in their home.
Having concluded that the instant contract was a fixed-cost contract which limited the liability of the Redmanns to $55,-000.00, there is no need to address the specific amounts due each creditor on an item by item basis. Whatever is owed on the open accounts is an action between Willis and the creditors, the Redmanns being protected by the $55,000.00 limit and having no privity of contract with the creditors.
For the reasons discussed, the judgment of the district court is reversed in part and affirmed in part to provide as follows:
“IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, L.G.W., Inc., and against the defendants, Mrs. Darcy P., wife of and Kerry P. Redmann, in the sum of $2,783.12 plus interest from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiffs in reconvention, Darcy P. Redmann and Kerry P. Redmann, and against the defendant in reconvention, L.G.W., Inc., in the sum of $3,377.52 (the cost of demolishing the retaining wall) plus interest from date of judicial demand until paid and for all costs.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all other demands are hereby dismissed.”
REVERSED IN PART; AFFIRMED IN PART.