987 So.2d 885 (2008)
TOWN OF HAYNESVILLE, Plaintiff-Appellee,
v.
ENTERGY LOUISIANA, INC., Defendant-Appellant.
No. 43,280-CA.
Court of Appeal of Louisiana, Second Circuit.
July 16, 2008.
*886 Entergy Services, Inc. by J. Wayne Anderson, Timothy Scott Cragin, New Orleans, John Christopher Neel, for Appellant.
Colvin, Weaver & Cerniglia, L.L.C. by James Henry Colvin, Cole B. Smith, Shreveport, Charles E. Weaver, for Appellee.
Before GASKINS, CARAWAY and DREW, JJ.
DREW, J.
The Town of Haynesville filed a petition for declaratory judgment against Entergy Louisiana, Inc. ("ELI")[1] which supplies electricity within the town pursuant to a 25-year franchise agreement entered January 15, 1985, with ELI's predecessor, Louisiana Power & Light. For the sake of simplicity, the power seller will be termed ELI throughout. In a franchise fee dispute, Haynesville previously obtained a final judgment that it was entitled to a higher franchise fee based on the terms of a Most Favored Nation ("MFN") side letter agreement with ELI. At this stage of this lengthy litigation, ELI appeals a summary judgment declaring that the utility could not offset the additional franchise fee due under the MFN clause by charging its Haynesville customers via a line item on the bill. The judgment is reversed.

PROCEDURAL AND FACTUAL HISTORY
In Town of Haynesville, Inc. v. Entergy Corp., 36,519 (La.App.2d Cir.1/31/03), 840 So.2d 597, writ denied, 03-0627 (La.App.2d Cir.6/6/03), 845 So.2d 1090 ("Haynesville # 1"), this court affirmed (1) the grant of the summary judgment holding that Haynesville was entitled to the additional 1% fee based on the MFN clause with ELI and (2) the denial of the summary judgment sought by ELI on whether the various power companies, including ELI, owned by Entergy Corporation constituted a "single business entity."
In Town of Haynesville, Inc. v. Entergy Corp., 42,019 (La.App.2d Cir.5/2/07), 956 So.2d 192, writ denied, 07-1172 (La.9/21/97), 964 So.2d 334, ("Haynesville *887 # 2"), this court ruled that the various utilities (including ELI) wholly owned by the Entergy Corporation, a public utility holding company, were not a single business entity. In that opinion, Judge Stewart gave a detailed history of the litigation.[2]
The 1985 franchise agreement provided that ELI pay the town 2% of its gross receipts to the Town of Haynesville. By *888 letter agreement containing an MFN clause, ELI agreed that, if ELI paid any municipality more than 2% of its gross receipts, ELI would pay Haynesville the higher rate. Haynesville learned that ELI paid the City of West Monroe 3% of its gross receipts. Under the MFN clause, Haynesville then sued ELI seeking the additional 1% paid to West Monroe. In Haynesville # 1, this court ruled that Haynesville was entitled to receive 3% of ELI's gross receipts based upon ELI's contract with West Monroe.
ELI has satisfied that final judgment. Haynesville asserted in this action that ELI is under a continuing obligation to pay 3% of its gross receipts to the town pursuant to the MFN provision in its contract, which expires on January 15, 2010. The 2% franchise fee found in the contract was included in ELI's base rate. ELI argued that, if it must pay Haynesville 3% of its gross receipts as a franchise fee, ELI had the right to add the additional 1% to the bills of its customers in Haynesville, which increased the electric rates of those users. According to the utility, its contract with Haynesville contemplated the full recovery of franchise fee payments because the contract was conditioned upon the utility's having the right to deduct from its gross revenues and charge as an operating expense any and all amounts paid to the town.
In 2007, the Louisiana Public Service Commission ("PSC") ordered that 50% of franchise fees be included in the utility's base rate while 50% of the franchise fees paid to a municipality must be listed as a line item on the customers' bills. The parties stated that the PSC order resolves the dispute from 2007 and prospectively. The town also agreed that the utility has satisfied the 2003 judgment by paying the 1% franchise fee that accumulated from 1989 (when the utility began paying West Monroe 3% total) to 2003 (when the judgment that the additional 1% was a franchise became final). At oral argument before this court, Haynesville stated that the town is not seeking monetary relief but a declaratory judgment that the utility cannot pass the 1% charge to its customers.
The town contended that passing on the 1% to the citizens of Haynesville is not allowed by the franchise agreement and was not intended by the agreement. In effect, the citizens of Haynesville were being required to pay the 1% triggered by the MFN clause, since ELI agreed to pay West Monroe a total of 3%. Haynesville wanted to receive a total of 3% of ELI's gross receipts as the franchise fee without allowing ELI to add the additional 1% as a "line item" on its bills to the individual electricity customers in the Town of Haynesville and sought a summary judgment.

REASONS FOR JUDGMENT
After a hearing on the town's motion for summary judgment and ELI's opposition, the trial court granted summary judgment in favor of Haynesville. In its written reasons, the trial court stated that ELI began charging the Haynesville citizens the additional 1% fee which was itemized on the bills as part of the franchise fee to Haynesville. Relying upon La. R.S. 33:4510 and PSC General Order dated October 18, 1988,[3] ELI unilaterally imposed this charge after losing the case.
The trial court observed that nothing in the franchise agreement or the MFN clause permitted ELI to pass this charge *889 on to individual customers. The statute and the PSC order are permissive, requiring disclosure of the fee if the fee is otherwise permitted to be passed on to the customer. Neither the statute nor the PSC order required that the fee be passed on to customers. Unlike the contracts with Tallulah, Richwood, and Springhill, which specifically reserved to ELI the right to pass on to customers franchise fees in excess of 2%, the Haynesville contract contains no such language. The trial court found that Haynesville bargained for more than the named towns. Otherwise, the language in agreements with other municipalities reserving ELI's right to pass along the extra 1% would be meaningless. Another undisputed factor was that ELI does not pass on the charge for 1% of its gross receipts to the citizens of West Monroe. The trial court ruled that the contract and the MFN clause prohibited ELI from passing on the 1% charge to the citizens of Haynesville.

DISCUSSION
In a joint filing to this court following oral arguments, ELI and Haynesville explained that:
 Base rates are spread among all customers throughout the system while franchise fee line item charges are billed only to those utility customers within the municipality that received the franchise fee.
 A utility is entitled to recover all of its prudently incurred costs.
 An electric company's rate structure has two major components: (1) base rates and (2) automatic fuel adjustment clause.
 The utility's regulator (PSC) determines which type of costs will be recovered through each component of the rate structure.
 Typically, a utility recovers fuel, purchased power and other fuel related costs through the automatic fuel adjustment rate, and other costs are recovered through base rates.
The parties concluded:
In summary, with respect to municipal franchise fees, if they were not considered in setting rates because they originated after the base rate case was filed and/or base rates were set, or for some other reason, La.Rev.Stat. 33:4510 allowed utilities to collect these costs directly from the ratepayers in the charging municipality on a pro-rata basis. The Town of Haynesville has argued that ELL [ELI] waived any regulatory right it may have had under the La.Rev. Stat. 33:4510 to collect the 1% additional franchise fee paid to the Town of Haynesville.
In arguing that the trial court erred in holding that the additional 1% franchise fee could not be charged to Haynesville residents as a line item charge on the bill, ELI stated that the none of the relevant documents (the municipal ordinances, the side letter with the MFN clause, and the franchise agreement itself) dealt with how ELI was to recover the additional 1% franchise fee. Moreover, the utility emphasized that none of the courts' rulings prohibit any particular manner of cost recovery or interpret state law and regulations.
The utility relied upon state law and a PSC order permitting the utility to charge the additional 1% due Haynesville as a line item on customers' bills. Enacted in 1960 and last amended in 1995, La. R.S. 33:4510 applies to this contract:
A. Whenever any political subdivision of the state of Louisiana, as defined in Article VI, Section 44(2) of the Constitution of Louisiana, shall collect or receive any payment from any public *890 utility operating within such political subdivision, including those utilities whose rates and charges are regulated by the Louisiana Public Service Commission, for or by reason of the use of its streets, alleys, or public ways or places, or lands belonging to the state, or for or by reason of the operation of the utility's business or by reason of any agreement between such political subdivision and the utility, whether such payment be called a license, occupational, privilege, franchise, or inspection tax, charge, or fee, or otherwise, the amount of such tax or payment may, to the extent that such tax or payment was not included as a part of the cost of furnishing services in the fixing of the rates and charges for such services by the Louisiana Public Service Commission, be added to the sales price of such public utility's service and billed pro rata to the utility's customers receiving local service within the political subdivision collecting such taxes or receiving such payments. (Emphasis added.)
ELI also pointed to an October 18, 1988, order of the Public Service Commission that required a utility to describe on a separate line any amount charged to customers that is not related to the tariff for service to the customers.
The utility and the town acknowledged that the agreement between them is silent as to ELI's recovery of the 1% additional franchise fee due to Haynesville. ELI pointed out that the contract was subject to the laws existing at the time of its adoption on January 15, 1985. The town urged that absence was, in essence, a waiver by ELI to the right to recover the 1% franchise fee from its Haynesville customers.
Effective January 1, 1985, La. C.C. art. 2054 provides:
When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose.
Equity means that no party is allowed to take unfair advantage of the other or to enrich himself unjustly at the expense of the other party while usage is a practice regularly observed in affairs of a nature identical or similar to the object of a contract under interpretation. See La. C.C. art. 2055.
As ELI noted, the record contained no evidence that ELI waived any statutory right by virtue of the omission of a provision concerning recovery of funds due under the MFN clause. The parties concede that the contract was silent on that subject.
We do not agree with the town's contention that the absence of recovery language in the 1985 agreement with Haynesville is tantamount to a prohibition against the utility's recovering the 1% franchise fee due under the MFN clause from its Haynesville customers. Haynesville and the trial court found that absence significant in light of the inclusion of recovery language in later ELI agreements with other municipalities. We respectfully disagree with the trial court's conclusion that the absence of recovery language meant that the town bargained for more benefits than the towns whose contracts included recovery language. The fact that the agreement between the utility and the town did not address recovery does not equal a prohibition against recovery from the customers, regardless of what those negotiating for the town may or may not have envisioned.
*891 ELI agreed with Haynesville's contention that the MFN agreements with other municipalities contained superfluous language that the utility could charge as a line item any additional payments due by virtue of the MFN clause. In the utility's view, the right to include any additional franchise fee as a line item on customers' bills was already extant by virtue of the 1988 PSC order and La. R.S. 33:4510, initially enacted in 1960. The utility also observed that the absence of language in the 1985 Haynesville agreement is not relevant to agreements with other municipalities many years later.[4]
The contractual arrangement between Haynesville and ELI provided that the utility was to pay an equivalent amount to Haynesville if the utility paid a franchise fee greater than 2% to any other municipality. Following the 2003 judgment, Haynesville acknowledged that ELI paid the additional 1% owed. As previously noted, the parties also agreed that action of the PSC in directing that 50% of the franchise fee be included in the base rate and 50% be included as a line item charge on the customers' bills resolved the dispute prospectively. See PSC General Order (Docket #R-27859) of May 24, 2007. Moreover, the parties acknowledged that ELI has continued to pay the town the 3% franchise fee. The utility correctly maintained that it fulfilled its contractual obligation to the town by having paid and continuing to pay the 3% franchise fee.
The town argued that the agreement with the City of West Monroe was more favorable because no line item was charged to the citizens of West Monroe for the 3% franchise fee. ELI factually distinguished its dealings with West Monroe. In 1989, ELI agreed to pay West Monroe a 2% franchise fee and an additional 1% compensation for certain changes that went into effect with the new franchise. In 1994, the PSC approved 3% payments to West Monroe being included in the West Monroe franchise fee expenses and ELI's base rates. Therefore, the total 3% payment was included in the base rates, which made it unnecessary to have a special line-item charge of 1% to the citizens of West Monroe. In contrast, the PSC in the 2002 test year rate case included the 2% Haynesville franchise fee in calculating its base rate. The 1% portion of the franchise fee due Haynesville under the MFN clause was not included in the ELI's base rates.
An examination of law and usage reveals ELI's action was appropriate, albeit probably neither contemplated nor desired by the town and its citizens. In providing service, utilities are entitled to recover prudently incurred costs. Franchise fees are among the utility's costs of doing business and are generally recoverable by the utility either in its base rates or via a line item.
The town and the trial court correctly noted that the language of La. R.S. 33:4510 is permissive and not mandatory. We agree that neither the statute nor the 1988 PSC order required that the 1% franchise fee due under the MFN clause be charged to customers as a line item. However, neither the statute nor the 1988 PSC order prohibited the line item charge as a means for the utility to recover that portion of the franchise fee due Haynesville.
The parties acknowledged that the 1985 contract and MFN letter did not address recovery of the 1%. The utility was correct that the absence of recovery language did not mean ELI bargained away its recovery of that expense. ELI's decision to recover the 1% franchise fee not included in its base rates as a line item on the customers' bills was permissible under R.S. *892 33:4510 and the 1988 PSC order. Bolstering ELI's position is the 1985 contract with the town which was conditioned upon the approval by federal and state regulatory agencies of "the right of the Company to deduct from its gross revenues and charge as an operating expense any and all amounts which it may pay to the municipality[.]" The absence of recovery language in the 1985 Haynesville agreement did not equate to a prohibition against the utility charging its Haynesville customers to recover its prudently incurred expenses including this portion of the franchise fee due the town.

DECREE
We reverse the summary judgment in favor of the Town of Haynesville declaring that under the franchise agreement, ELI could not charge the 1% franchise fee due Most Favored Nation clause as a line item on the bills of its Haynesville customers. Costs of the appeal by ELI are assessed against the Town of Haynesville in the amount of $120.00. The matter is remanded to the trial court for any additional proceedings which may be deemed necessary by the parties.
REVERSED AND REMANDED.
NOTES
[1] The utility's current name is Entergy Louisiana, L.L.C. ("ELL").
[2] LP & L has provided electric service to much of north and southeast Louisiana for nearly 60 years. In the municipalities that LP & L has served, it has obtained franchises giving it various rights, including the right to use the streets and public ways of the municipality to provide electric service to service locations within the municipality. These long term agreements support the capital investment needed to supply service.

On January 15, 1985, LP & L entered into a franchise agreement with the Town of Haynesville. The franchise granted LP & L the right to supply electric service to Haynesville for twenty-five years in exchange for a franchise fee of 2% of the gross receipts from the sale of electric service for retail and commercial purposes within Haynesville. Haynesville also wanted the right to increase its 2% fee in the event that LP & L ever contracted to pay a higher fee to another municipality. As a result, the parties entered into a side letter agreement containing a "Most Favored Nation" clause that provided:
As part and portion of the consideration for the franchise renewal contract granted by the Town of Haynesville to Louisiana Power and Light Company (the "Company")... the Company does hereby further agree, that in the event the Company contracts with any other town or municipality in the renewal of its franchise contracts to pay as a franchise fee more than two (2%) percent of the gross receipts of the Company from the sale of electric service ... the Company will increase the franchise fee more than two (2%) percent of gross receipts of the Company from the sale of electric service ... the Company will increase the franchise fee paid to the Town of Haynesville. (Emphasis added.)
At the time the side letter was executed, LP & L's sister operating companies, AP & L, MP & L, and NOPSI had franchise or similar agreements relating to the locations that they served. These arrangements vary in their terms and conditions, including the amount of the fee to be paid.
A history of Entergy and LP & L would be useful at this point. Middle South Utilities, Inc. (MSU) was formed in 1949 as a "public utility holding company" under the Public Utility Holding Company Act of 1935 (PUHCA). As a holding company, MSU owned 100% of the common stock of four subsidiaries, Arkansas Power and Light Company (AP & L), Mississippi Power and Light Company (MP & L), Louisiana Power and Light Company (LP & L), and New Orleans Public Service, Inc. (NOPSI). In 1963, MSU formed a service company to provide certain services for these companies.
MSU changed its name to Entergy Corporation on May 19, 1989. In 1992, Entergy announced its plans to acquire Gulf States Utilities, Inc. (GSU), a public utility company serving southwest Louisiana and southeast Texas. In 1996, each of the five subsidiaries changed their names to signify their affiliation with Entergy and their geographical and jurisdictional separateness.
Now turning to the instant case, Haynesville instituted this suit alleging that ELI breached its franchise agreement with the Town by failing to pay a franchise fee of 3% of the gross receipts from sales of electricity because ELI paid the City of West Monroe a franchise fee of 3% and by failing to pay to the Town a 5% franchise fee that had been traditionally paid by GSU.
On July 11, 2001, Haynesville filed a motion for summary judgment on its 3% claim. The trial court granted the Town's motion. ELI appealed. On January 31, 2003, this Court affirmed the decision of the trial court. On March 29, 2005, the trial court addressed the merits of the Town's 5% claim against ELI. The trial court determined that MFN agreement is ambiguous, that Entergy is a single business enterprise, and that the Town is entitled to receive the 5% franchise fee paid by Energy Gulf States, Inc. to the municipalities it serves. ELI filed a motion for new trial which was denied.
Town of Haynesville, Inc. v. Entergy Corp., 42,019 (La.App.2d Cir.5/2/07), 956 So.2d 192, 194-5, writ denied, 07-1172 (La.9/21/97), 964 So.2d 334.
[3] The Louisiana Public Service Commission General Order of October 18, 1988, mandated that charges and other assessments (including franchise fees) not related to the utility's cost of service be shown on the customers' bills as line item entries.
[4] Agreements were made with Springhill and Richwood in 1998 and Tallulah in 1999.