STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-1193

BEVERLY E. LEDET

VERSUS

JOHN J. CAMPO, JR., ET AL.

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 239,955
HONORABLE HARRY F. RANDOW, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Marc T. Amy, Shannon J. Gremillion, and John E. Conery, Judges.

AFFIRMED.

Mark A. Watson
Stafford, Stewart & Potter
Post Office Box 1711
Alexandria, LA 71309-1711
(318) 487-4910
COUNSEL FOR DEFENDANT/APPELLEE:
    Patrick C. Mathews

Eugene A. Ledet, Jr.
Dalrymple & Ledet, LLC
Post Office Drawer 14440
Alexandria, LA 71315
(318) 442-1818
COUNSEL FOR PLAINTIFF/APPELLANT:
    Beverly E. Ledet

**Stephen Dale Cronin**
**Guglielmo, Marks, Schutte, Terhoeve & Love**
**320 Somerulos Street**
**Baton Rouge, LA   70802**
**(225) 387-6966**
**COUNSEL FOR DEFENDANT/APPELLEE:**
        **Safeco Insurance Company of America**

**AMY, Judge.**

The plaintiff in this matter, Beverly E. Ledet, was a shared employee of Dr. John J. Campo and Dr. Patrick C. Mathews, who operated a dental practice together. Both employers decided to change Ms. Ledet's compensation structure, and Dr. Mathews had a conversation with Ms. Ledet concerning the changes in compensation and office policy. Thereafter, both of her employers decided to terminate Ms. Ledet's employment, and Dr. Mathews telephoned Ms. Ledet to inform her of that decision. Ms. Ledet filed suit, alleging, among other claims, that Dr. Mathews tortiously interfered with her employment contract with Dr. Campo. Dr. Mathews and his homeowners' insurer filed motions for summary judgment, which were both granted by the trial court. This appeal follows. For the following reasons, we affirm.

### Factual and Procedural Background

Ms. Ledet is a dental hygienist. For eight years, she was employed by two dentists, John J. Campo, DDS, PLLC, and Patrick C. Mathews, DDS, LLC.[1] The record indicates that Dr. Mathews and Dr. Campo operated as separate entities but that they shared a dental practice pursuant to a written agreement. According to deposition testimony, Dr. Mathews now owns a majority of the practice. Ms. Ledet received separate paychecks and separate W-2s from both Dr. Mathews and Dr. Campo.

According to the record, Dr. Campo and Dr. Mathews decided to change the compensation structure for their dental hygienists from commission to salary. Dr. Mathews spoke with Ms. Ledet about the change, as well as about office policy, on

---

[1] Ms. Ledet testified that she worked solely for Dr. Campo until Dr. Mathews joined his practice approximately eight years before the incident at issue herein.

July 29, 2010. Although Dr. Mathews and Ms. Ledet agreed generally about the content of that meeting, the tenor of the conversation is in dispute. Dr. Mathews testified in his deposition that Ms. Ledet was disrespectful and that he could tell from her tone that she was unhappy. According to Dr. Mathews, Ms. Ledet pointed her finger at him and spoke in a loud and aggressive manner. Ms. Ledet denies that the conversation was anything but professional and additionally contends that Dr. Mathews "made accusations about the way [she] was practicing hygiene."

Both Dr. Mathews and Dr. Campo testified that they discussed the situation. Both testified that Dr. Campo initially suggested that they should terminate Ms. Ledet's employment and that they both agreed to let her go. According to Dr. Mathews, "the straw that broke the camel's back" was not that Ms. Ledet acted inappropriately during their conversation the day before, but that another employee had reported to him that she had an uncomfortable conversation with Ms. Ledet wherein Ms. Ledet accused her of "interfering" with Ms. Ledet's "business." Dr. Campo testified that he based his decision primarily on Ms. Ledet's apparent refusal to accept the pay change. According to Dr. Campo, when he briefly spoke with Ms. Ledet before her conversation with Dr. Mathews, she "basically" told him she was not going to agree to the pay change.

The next day, Dr. Mathews called Ms. Ledet and informed her that both he and Dr. Campo were terminating her employment. Dr. Mathews testified that he told Ms. Ledet that the way she had spoken with him was part of the reason he and

Dr. Campo were terminating her employment. Dr. Mathews also told her that he had spoken with other dentists about terminating her employment.[2]

Thereafter, Ms. Ledet brought this action initially against John J. Campo, DDS, PLLC, and Patrick C. Mathews, DDS, LLC. Therein, she alleged that Dr. Mathews made derogatory comments about her abilities as a hygienist and "numerous false accusations" about their meeting concerning the change in pay. Ms. Ledet also alleged that Dr. Campo and Dr. Mathews "openly bragged" about the termination with office personnel and others. According to her complaint, Ms. Ledet has been "emotionally devastated and has been unable to find employment in the Alexandria, Louisiana area." Ms. Ledet asserted claims under theories of defamation of character, intentional infliction of emotional distress, libel and slander, negligent misrepresentation, breach of contract, and "other actions." With regard to damages, Ms. Ledet sought damages for severe emotional distress, defamation of her name in the dental community, loss of wages, and "other damages."

After Ms. Ledet amended her petition to name Dr. Mathews, individually, as a defendant, she voluntarily dismissed her claims concerning defamation of character, intentional infliction of emotional distress, libel and slander, and "other actions." She also dismissed her claim for damages for defamation in the dental community. Ms. Ledet also amended her petition to name Dr. Mathews' homeowners' insurance company, SAFECO Insurance Company of America.

---

[2] According to Dr. Mathews, he spoke with Dr. Campo and his father-in-law about the situation. Dr. Mathews testified that his father-in-law is also a dentist and that, when he spoke to him about Ms. Ledet, he did not tell his father-in-law which hygienist he was referring to.

Thereafter, Dr. Mathews[3] and SAFECO filed separate motions for summary judgment. Therein, Dr. Mathews argued that, because Ms. Ledet was an at-will employee, he could not be held liable for his actions in terminating her employment and, in any case, Ms. Ledet had no evidence that she had any loss of wages as a result of the termination. SAFECO contended that, because all of Dr. Mathews' alleged actions were taken as part of his business pursuits, SAFECO, as Dr. Mathews' homeowners' insurer, had no liability under the policy it issued to Dr. Mathews. SAFECO also noted that Ms. Ledet was an at-will employee of Dr. Mathews and Dr. Campo. Further, SAFECO observed that Ms. Ledet testified at her deposition that she had not sought any medical or psychological treatment as a result of her termination, that she denied having any medical condition that would relate to those incidents, and that she testified that no one had ever informed her that they would not hire her because of something that Dr. Mathews had said to them about her.

Ms. Ledet responded, contending that Dr. Mathews tortiously interfered with her contract of employment with Dr. Campo by misrepresenting their conversation of July 29, 2010 and because "all of the facts that resulted in Campo terminating Ms. Ledet came straight from Mathews." Ms. Ledet also pointed to Dr. Mathews' cell phone records, which showed that Dr. Mathews spoke several times with one of the other dental hygienists, and implied that these conversations had something to do with the termination of her employment. With regard to SAFECO's contention that there was no coverage under its homeowners' insurance policy, Ms.

---

[3] Dr. Mathews, individually, and Patrick C. Mathews, DDS, LLC, jointly filed the motion for summary judgment. We note that the parties generally do not make a narrative distinction between Dr. Mathews and his corporate entity, and, unless appropriate, neither shall we.

Ledet contended that "dishonesty, moral turpitude and the like are not actions arising out of the business pursuits of the insured, namely, dentistry in this case."

After a hearing, the trial court granted both motions for summary judgment and dismissed Ms. Ledet's claims against Patrick C. Mathews, DDS, LLC, Dr. Mathews, individually, and SAFECO. Ms. Ledet appeals, asserting as error:

> 1. Was it manifestly erroneous and legal error for the trial court to have required ***"privity of contract"*** between Dr. Mathews, Ms. Ledet, and Dr. Campo, as prerequisite to a breach of contract claim by Ledet against Mathews?

> 2. Was it manifestly erroneous and legal error for the court to summarily determine issues of intent, motive, malice, and good faith, subjective facts rarely determined by summary judgment?

> 3. Was it manifestly erroneous and legal error for the court to summarily conclude the conduct of Dr. Mathews involved business pursuits, and was therefore excluded under the SAFECO policy of insurance, when issues of intent, motive and good faith had yet to be determined?

## Discussion

*Motions for Summary Judgment - Dr. Mathews*

Louisiana Code of Civil Procedure Article 966[4] permits a party to seek summary judgment, which shall be granted when "there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(C)(1). Further, although the burden of proof remains with the movant,

> if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to

---

[4] La.Code Civ.P. art. 966 was amended in 2012 by Act 257.

5

satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

La.Code Civ.P. art. 966(C)(2).

"Appellate courts review a trial court's grant or denial of a motion for summary judgment using the *de novo* standard of review, under the same criteria that govern the trial court's consideration of whether a summary judgment is appropriate in any given case." *Boykin v. PPG Industries, Inc.*, 08-117, p. 4 (La.App. 3 Cir. 6/18/08), 987 So.2d 838, 842 (citing *Indep. Fire Ins. Co. v. Sunbeam Corp.*, 99-2181, 99-2257 (La. 2/29/00), 755 So.2d 226), *writ denied*, 08-1635, 08-1640 (La. 10/31/08), 994 So.2d 537.

Before delving into the substance of her assignments of error, we observe that the trial court found that Ms. Ledet's claim for tortious interference with a contract was precluded under *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228 (La.1989). In *9 to 5 Fashions*, the supreme court revisited its previous jurisprudence concerning tortious interference with a contract and found that:

> an officer of a corporation owes an obligation to a third person having a contractual relationship with the corporation to refrain from acts intentionally causing the company to breach the contract or to make performance more burdensome, difficult or impossible or of less value to the one entitled to performance, unless the officer has reasonable justification for his conduct. The officer's action is justified, and he is entitled to a privilege of immunity, if he acted within the scope of his corporate authority and in the reasonable belief that his action was for the benefit of the corporation.

*Id.* at 231.

The trial court rejected Ms. Ledet's claim for tortious interference with a contract on the basis that *9 to 5 Fashions* limits liability to corporate officers and that there was no evidence that Dr. Mathews was an officer of Dr. Campo's professional limited liability company. *See Favrot v. Favrot*, 10-986 (La.App. 4

Cir. 2/9/11), 68 So.3d 1099, *writ denied*, 11-636 (La. 5/6/11), 62 So.3d 127; *Tech. Control Sys., Inc. v. Green*, 01-955 (La.App. 3 Cir. 2/27/02), 809 So.2d 1204, *writ denied*, 02-962 (La. 5/31/02), 817 So.2d 100. We find nothing in Ms. Ledet's brief to this court indicating that she is contesting that issue and, therefore, do not address that portion of the trial court's judgment.

Next, Ms. Ledet contends that the trial court erred in finding that there was no privity of contract between herself, Dr. Mathews, and Dr. Campo that would impose a duty of good faith upon Dr. Mathews in his dealings with Dr. Campo with regard to Ms. Ledet. Ms. Ledet argues that her claim is not that Dr. Mathews' termination of her employment on his own behalf was improper, but that "the cause of action focuses on whether Dr. Mathews' conduct in misrepresenting facts to Dr. Campo constitutes a breach of his obligation to perform in good faith, and resulting damages." In support of this contention, Ms. Ledet refers to La.Civ.Code art. 1759, which states "[G]ood faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation." Ms. Ledet also notes that comment (e) to La.Civ.Code art. 2024, which addresses the termination of contracts of unspecified duration, contemplates that "[i]n proceeding under this Article, the parties must comply with the overriding duty of good faith. Reasonable advance notice will usually be required to avoid unwarranted injury to the interest of the other party."

We find no merit to Ms. Ledet's assertion that Dr. Mathews is liable for breach of contract by violating the duty of good faith. In order to succeed on a breach of contract claim, the plaintiff must prove the existence of the contract, a breach of the obligations therein, and damages. *Favrot*, 68 So.3d 1099. Louisiana Civil Code Article 1983 requires that "[c]ontracts must be performed in good

7

faith." However, "[j]udicial determination of good-faith (or bad-faith) failure to perform a conventional obligation is always preceded by a failure to perform, or a breach of the contract." *Favrot*, 68 So.3d at 1110. In *Favrot*, two brothers, Semmes and James, contracted with their father concerning the transfer of interest in the family business. The father promised that he would sell each of his sons a portion of his interest in the business, if both remained employed with the business for three years. However, if either was to leave employment within that time, voluntarily or involuntarily, the other would purchase the entirety of the interest. "The brothers soon started squabbling," and, before the three-year period expired, the father fired Semmes. *Id.* at 1106. Thereafter, Semmes brought suit against James, alleging breach of contract and tortious interference with a contract. The fourth circuit rejected both of those claims. In addressing the breach of contract claim, which was based on an allegation that the brothers were bound by an obligation of good faith, the fourth circuit noted that Semmes "can point to *no obligation expressed in the agreement which James is bound to perform for Semmes.*" *Id.* at 1107. The fourth circuit concluded that the duty of good faith only attaches when there is a failure to perform an obligation and that, since James owed no obligation to Semmes, there was no breach of contract with regard to a breach of the duty of good faith. *Id.*

A review of the record indicates that Dr. Mathews pointed out the absence of factual support for Ms. Ledet's claims of breach of contract, namely, that Ms. Ledet was an at-will employee and that Dr. Mathews could not therefore be liable for damages associated with termination of her employment.[5] Thus, in order to

_____

[5] The record indicates that Ms. Ledet concedes that her employment with Drs. Campo and Mathews was at-will. Pursuant to La.Civ.Code. art. 2747, "[a] man is at liberty to dismiss a

8

defeat Dr. Mathews' motion for summary judgment, Ms. Ledet had to show that she could meet her evidentiary burden at trial. Pursuant to the holding in *Favrot*, 68 So.3d 1099, in order to find that Dr. Mathews breached a duty of good faith towards Ms. Ledet, there must first be a finding that Dr. Mathews owed an obligation to Ms. Ledet.

Our review of the record reveals that Ms. Ledet presented no evidence indicating that Dr. Mathews owed her any obligation pursuant to her at-will employment with Dr. Campo. Dr. Mathews testified that he entered into a contract with Dr. Campo concerning the operation of the dental practice. However, no copy of the agreement was submitted as evidence and there is nothing in the testimony indicating that the agreement contemplated that Dr. Mathews would owe any obligations towards Dr. Campo's employees. Further, Ms. Ledet submitted no evidence indicating that her at-will employment with Dr. Mathews imposed upon him any duties with regard to her employment with Dr. Campo.

Accordingly, we find that, with regard to Ms. Ledet's breach of contract claims, there is no genuine issue of material fact and that Dr. Mathews is entitled to judgment as a matter of law. This assignment of error is without merit.

*Motion for Summary Judgment - SAFECO*

SAFECO also filed a motion for summary judgment, seeking to be dismissed from this suit on the basis that there was no coverage for Ms. Ledet's

---

hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause." *See also Quebedeaux v. Dow Chem. Co.*, 01-2297, p. 5 (La. 6/21/02), 820 So.2d 542, 545 ("When the employer and employee are silent on the terms of the employment contract, the civil code provides the default rule of employment-at-will."). Further, an employer may generally terminate an at-will employee's employment at any time for any reason without incurring liability, as long as that reason does not violate state or federal law. *Id.* "Beyond that, the reasons for termination need not be accurate, fair or reasonable." *Bell v. Touro Infirmary, Inc.*, 00-824, p. 4 (La.App. 4 Cir. 3/21/01), 785 So.2d 926, 928.

claims against Dr. Mathews under his homeowners' insurance policy. SAFECO contends that its policy contains a coverage exclusion for "business pursuits" and that "[a]ll of the events that are at issue in the instant litigation involved the Plaintiff's employment with Dr. Mathews."

In support of its contention that there is no coverage for Ms. Ledet's claims under its policy, SAFECO submitted into evidence copies of both a homeowners' insurance policy and an umbrella policy. The policy names Patrick Mathews and Kelly Mathews as insureds. The homeowners' policy, in relevant part, indicates that "**Personal Liability**" coverage "do[es] not apply to bodily injury or property damage . . . "arising out of the **business** pursuits of any **insured**." Further, the homeowners' policy provides that "**Personal Offense**" is defined as "injury arising out of one or more of the following offenses: . . . libel, slander, defamation of character" and that personal offense "[c]overage does not include . . . injury arising out of the **business pursuits** of any **insured**." Additionally, the umbrella policy contains a provision that the policy does not apply to "**personal injury**" "arising out of the oral or written publication of material; if done by or at the direction of an **insured** with knowledge of its falsity," as well as "**bodily injury, personal injury, or property damage**" "sustained by any person as the result of an offense directly or indirectly related to the employment of this person by any **insured**" or "arising out of any act or omission of any **insured** as an officer or member of the board of directors of any corporation or organization." (Emphasis in original).

The trial court granted SAFECO's motion for summary judgment, finding that Ms. Ledet failed to produce anything other than "speculation" that Dr. Mathews' alleged actions were anything other than actions taken as part of the management of his dental practice.

Ms. Ledet's assignments of error with regard to SAFECO's motion for summary judgment allege that the trial court erred in considering "intent, motive, malice, and good faith" and in concluding that Dr. Mathews' conduct only involved business pursuits. In her brief to this court, Ms. Ledet cites no authority but references several phone calls between Dr. Mathews and another dental hygienist during the time period at issue herein. Ms. Ledet calls those calls "quite peculiar" and asserts that "if explored further, [the telephone conversations] will answer questions such as motive, intent and bad faith."

In *Collins v. Farris*, 03-1991, pp. 3-4 (La.App. 1 Cir. 11/3/04), 897 So.2d 634, 637-38, the first circuit discussed claims that coverage was not provided under a policy, stating that:

> An insurer seeking to avoid coverage through summary judgment has the burden of proof that coverage is not provided under the policy. *See Gaylord Chemical Corp. v. ProPump, Inc.*, 98-2367 (La.App. 1st Cir. 2/18/00), 753 So.2d 349, 352; *Smith v. Terrebonne Parish Consol. Gov't*, 02-1423 (La.App. 1st Cir. 7/02/03), 858 So.2d 671, 673. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. *Reynolds v. Select Properties, Ltd.*, 93-1480 (La. 4/11/94), 634 So.2d 1180, 1183; *Brown v. Coregis Ins. Co.*, 99-0048 (La.App. 1st Cir. 2/18/00), 752 So.2d 347, 352.

### *Interpretation of Insurance Policy*

> An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 (La. 1/14/94), 630 So.2d 759, 763; *see* LSA-C.C. arts. 2045-2057. Analysis should begin with a review of the words in the insurance contract, and the contract must be enforced as written when the words are clear and explicit and lead to no absurd consequences. *See* LSA-C.C. art. 2046; *Dyess v. American Nat. Prop. & Cas. Co.*, 03-1971 (La.App. 1st Cir. 6/25/04), 886 So.2d 448, 451. If, after applying the other general rules of construction, an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of the insured.

11

> *Smith v. Matthews*, 611 So.2d 1377, 1379 (La.1993); *see* LSA-C.C. art. 2056.

Further, the second circuit addressed the purpose of "business pursuits" exclusions in *Stills v. Mims*, 42,799, pp. 5-6 (La.App. 2 Cir. 12/5/07), 973 So.2d 118, 121, stating that:

> The business pursuits exclusion in a homeowner's policy is intended to exclude risks that should be covered under different policies. *Richard v. Milazzo*, 2001-2233 (La.App. 1st Cir. 11/8/02), 831 So.2d 1055. For example, the commercial risks of a business would typically be covered by a commercial liability policy, whereas the risks associated with a rental dwelling would typically be insured by rental property insurance. *Id.* The removal of the risks associated with business enterprises or rental properties helps to lower the rates of homeowner's insurance by eliminating non-essential coverages. *Jackson v. Frisard*, 96[-]0547 (La.App. 1st Cir. 12/20/96), 685 So.2d 622, *writs denied*, 97-0193 (La. 3/14/97), 689 So.2d 1386 *and* 97-0201 (La. 3/14/97), 689 So.2d 387; *Blue Ridge Ins. Co. v. Newman*, 453 So.2d 554 (La.1984). Also, the phrase "arising out of," as used in the exclusion, implies an element of causality rather than the proximate cause. *Elorza v. Massey*, 00-313 (La.App. 5th Cir. 3/14/01), 783 So.2d 453.

"Although summary judgment is seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge, or malice, . . . 'summary judgment may be granted on subjective intent issues when no issue of material fact exists concerning the pertinent intent.'" *Jones v. Estate of Santiago*, 03-1424, p. 6 (La. 4/14/04), 870 So.2d 1002, 1006. Further, "[m]ere conclusory allegations, improbable inferences and unsupported speculation will not support a finding of a genuine issue of material fact. Such allegations, inferences and speculation are insufficient to satisfy the opponent's burden of proof, even if contained in a deposition." *Sears v. Home Depot USA, Inc.*, 06-201, p. 12 (La.App. 4 Cir. 10/18/06), 943 So.2d 1219, 1228, *writ denied*, 06-2747 (La. 1/26/07), 948 So.2d 168 (citations omitted). *See also Trudell v. Crowder*, 99-496 (La.App. 3 Cir. 10/13/99), 747 So.2d 142.

Ms. Ledet offers only speculation and offers no concrete evidence concerning Dr. Mathews' motivation in communicating (or, according to Ms. Ledet, mis-communicating) the circumstances of his July 29, 2010 conversation with Ms. Ledet to Dr. Campo.[6] Absent Ms. Ledet's insinuations and speculative allegations, our review of the record herein reveals that *all* of Ms. Ledet's remaining claims arise out of the circumstances of the termination of her employment by Dr. Mathews and Dr. Campo. SAFECO's policy clearly excludes injuries arising out of the business pursuits of the insured. We find that there is no reasonable interpretation of the policy which would exclude the termination of Ms. Ledet's employment from Dr. Mathews' business pursuits. Further, Ms. Ledet has dismissed those claims that may have involved Dr. Mathews' actions outside the scope of his dental practice, i.e., her claims for defamation of character, intentional infliction of emotional distress, libel and slander, and "other actions."

Accordingly, we find no genuine issue of material fact with regard to SAFECO's motion for summary judgment and that SAFECO is entitled to judgment as a matter of law. These assignments of error are without merit.

## DECREE

For the foregoing reasons, we affirm the judgment of the trial court granting summary judgment in favor of Patrick C. Mathews; Patrick C. Mathews, DDS, LLC; and SAFECO Insurance Company of America. The costs of this appeal are allocated to the plaintiff–appellant, Beverly E. Ledet.

**AFFIRMED.**

---

[6] Additionally, we note that Ms. Ledet deposed Dr. Mathews concerning the subject of the phone calls between him and the other dental hygienist. Dr. Mathews testified that he was not sure about the content of those phone calls, but that he may have called the other hygienist to discuss her "uncomfortable" conversation with Ms. Ledet and to see if she could help arrange a substitute hygienist for Ms. Ledet.