STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-125

CRAIG DRIESSE

VERSUS

NATIONAL OILWELL VARCO, LP

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 118,554
HONORABLE KEITH R. J. COMEAUX, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Elizabeth A. Pickett, James T. Genovese, Phyllis M. Keaty, and John E. Conery, Judges.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Keaty, J., dissents and assigns written reasons.
Conery, J., concurs in part and dissents in part for the reasons assigned by
    Judge Keaty.

L. Clayton Burgess
Angela B. Odinet
L. Clayton Burgess, APLC
605 West Congress Street
Lafayette, Louisiana 70501
(337) 234-7573
Counsel for Plaintiff/Appellant:
    Craig Driesse

**Christopher E. Moore**
**Christine M. White**
**Jacob C. Credeur**
**Ogletree, Deakins, Nash, Smoak, & Stewart PC**
**701 Poydras Street, Suite 3500**
**New Orleans, Louisiana 70139**
**(504) 648-3840**
**Counsel for Defendant/Appellee:**
    **National Oilwell Varco, LP**

**PICKETT, Judge.**

Craig Driesse appeals from the trial court's judgment granting summary judgment in favor of National Oilwell Varco, L.P. (NOV). NOV answered the appeal, seeking damages for frivolous appeal. For the following reasons, we affirm in part and reverse in part the judgment of the trial court and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

The issue in this sexual harassment case is whether a genuine issue of material fact exists as to whether an employer-employee relationship existed between Driesse and NOV for purposes of the Louisiana Employment Discrimination Law (LEDL), La.R.S. 23:302-303, and the Louisiana Workers' Compensation Act (LWCA), La.R.S. 23:1031-1032. Driesse claims that he was employed by NOV and co-employed by Lofton Industries, Inc., also known as Lofton Staffing Services (Lofton). In April of 2010 when Driesse was working for NOV, he was allegedly verbally harassed by his co-workers, James Latiolais and Jason Hill.[1] Driesse contends that this verbal harassment, which eventually turned into sexual harassment, lasted for approximately four months until he was fired by Troy Melchanon, another NOV employee, in August of 2010.

As a result, Driesse filed a lawsuit against NOV along with Latiolais and Hill, individually, for sexual harassment pursuant to the LEDL.[2] In his Petition for Damages, Driesse also claimed that NOV was liable for negligence. On August 7, 2012, NOV filed a motion for summary judgment, arguing that NOV was not

---

[1] Driesse refers to "Jaysun" and "Jayson" throughout his petition. In its appellate brief, NOV asserts that the correct spelling is "Jason."

[2] Nothing in the record before us indicates that Driesse attempted to serve Latiolais and/or Hill with the citation and petition.

Driesse's employer as defined by La.R.S. 23:302(2). NOV further claimed that the exclusivity provision of the LWCA, La.R.S. 23:1032, barred Driesse's negligence claims.

After the October 4, 2012 hearing, the trial court continued NOV's motion and gave Driesse ninety days to conduct discovery on the issue of NOV's employer status. Driesse subsequently filed a First Amending and Supplemental Petition on November 2, 2012, naming Lofton as an additional Defendant.

The trial court heard oral argument on NOV's motion for summary judgment again on May 8, 2013. The trial court subsequently issued reasons for judgment on June 28, 2013, granting NOV's motion for summary judgment on the issue of the viability of Driesse's claims under the LEDL and on the issue of negligence. The trial court entered judgment in favor of NOV and dismissed all claims asserted by Driesse against it with prejudice.

On appeal, Driesse asserts one vague assignment of error. He contends that the trial court manifestly erred in granting NOV's motion for summary judgment. Driesse alleges that "[t]he record is replete with genuine issues of material fact regarding" NOV's employment of Driesse, and, therefore, NOV's motion for summary judgment "was fatally flawed."

**DISCUSSION**

Resolution of this appeal turns on whether NOV was Driesse's employer pursuant to the LEDL and whether dismissal of Driesse's negligence claims against NOV, pursuant to the exclusivity provision of the LWCA, was proper.

Louisiana Code of Civil Procedure Article 966(B)(2) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the

motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." Although the burden of proof remains with the movant, La.Code Civ.P. art. 966(C)(2) further provides:

> [I]f the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

"'Appellate courts review a trial court's grant or denial of a motion for summary judgment using the *de novo* standard of review, under the same criteria that govern the trial court's consideration of whether a summary judgment is appropriate in any given case.'" *Ledet v. Campo*, 12-1193, p. 6 (La.App. 3 Cir. 3/6/13), 128 So.3d 1034, 1038 (quoting *Boykin v. PPG Indus., Inc.*, 08-117, p. 4 (La.App. 3 Cir. 6/18/08), 987 So.2d 838, 842).

## I.    Employer-Employee Relationship Pursuant to LEDL

An employer is defined in the LEDL, La.R.S. 23:302(2) (emphasis added), as "a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state *receiving services from an employee and, in return, giving compensation of any kind to an employee*." In determining whether an employment relationship existed between Driesse and NOV, Driesse contends that the right of the employer to control the work of the employee is the most important factor. Driesse alleges that an employment relationship existed since he reported to work every day at the instruction of NOV,

and since NOV controlled his work location, his hours of work, and the manner and type of work he performed. Driesse claims that NOV provided equipment and tools and supervised his workmanship every day.

In opposition, NOV contends that it is not considered an employer under the LEDL such that it cannot be liable to Driesse, because NOV did not give compensation to Driesse.

In granting NOV's motion for summary judgment on the viability of Driesse's claim under the LEDL, the trial court stated that Louisiana jurisprudence "clearly requires an entity to compensate an individual to qualify as an employer, which NOV did not do. NOV did not perform any other functions used to determine if an entity qualifies as a compensating employer under the LEDL, such as withholding taxes or providing benefits."

Attached to NOV's motion for summary judgment was the affidavit of Kisha Adcock. Nineteen NOV invoices were attached to the affidavit as Exhibit A. Adcock attested that she was NOV's human resources representative in 2010 and the custodian of the records attached to her affidavit. Adcock stated that Driesse was Lofton's employee and was assigned to work temporarily with NOV. Adcock attested that Lofton supplied NOV with temporary employees, such as Driesse, to work on NOV projects when NOV needed additional help. Adcock stated that NOV never paid compensation to these temporary workers. Rather, NOV paid a fee to Lofton based upon the number of hours worked by the temporary workers. Adcock attested that NOV did not pay Driesse's wages nor did it withhold federal, state, unemployment, or social security taxes from his check. She stated that Driesse was ineligible to participate in NOV's benefit plans since he was not an

4

NOV employee. Adcock attested that NOV simply verified the hours worked by Driesse and paid the invoices Lofton submitted for its employees.

The invoices NOV received from Lofton for Driesse's work performed from April through August of 2010 were attached to the affidavit. These invoices were printed on Lofton letterhead and addressed to NOV. The money paid by NOV to compensate Driesse for his work was remitted directly to "Lofton Staffing Services" and not to Driesse.

We find that the arrangement described in the affidavits and invoices shows that NOV received services from Driesse and, in return, gave compensation "of any kind" to Driesse, albeit through an intermediary, Lofton. This evidence shows that NOV paid Lofton specifically for work done by Driesse, and Lofton then paid Driesse after withholding taxes and social security. This is sufficient to create an employment relationship for the purposes of the LEDL. The fact that the compensation flowed through Lofton does not change the salient fact that the money was ultimately paid to Driesse for services performed for NOV.

We conclude that NOV paid Driesse's wages through Lofton. Thus, we find that NOV is Driesse's employer under the LEDL, and the trial court's granting of summary judgment in favor of NOV is reversed.

## II.     Exclusion of Negligence Claims Pursuant to LWCA

Our conclusion that Driesse is an employee of NOV for the purposes of the LEDL is bolstered by the fact that NOV argues that Driesse is an employee for the purposes of the LWCA in order to avoid liability for negligence. For public policy purposes, we cannot countenance a situation where an employer is allowed to disclaim its status as an employer for any purpose that avoids liability while rushing to wrap itself in the protections afforded to an employer in the LWCA.

In his petition, Driesse claimed that NOV was liable for negligence, including negligent hiring, negligent supervision, and negligent training of its employees. In response, NOV argued in its summary judgment that despite NOV's lack of employer status under the LEDL, Driesse was a borrowed employee under the LWCA. NOV further argued that as a borrowed employee, Driesse's negligence claims against NOV were barred by the exclusivity provision of the LWCA, La.R.S. 23:1032.

In granting NOV's summary judgment on this issue, the trial court agreed with NOV that Driesse was NOV's borrowed employee. The trial court's holding was based upon the exclusivity provision contained in the LWCA, La.R.S. 23:1032(A)(1)(a) (emphasis added), which provides in pertinent part: "the rights and remedies herein granted to an employee . . . on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, *shall be exclusive of all other rights*, remedies, and claims for damages." With respect to a borrowed employee's rights under the LWCA, the court in *Sanchez v. Harbor Construction Co., Inc.*, 07-234, p. 6 (La.App. 4 Cir. 10/3/07), 968 So.2d 783, 787, held that under the LWCA, La.R.S. 23:1031(C),[3] "both the lending and borrowing employer are liable *in solido* for worker's compensation." Thus, if Driesse is a borrowed employee, he is barred from bringing a negligence action against NOV since under La.R.S. 23:1031(C), both

---

[3] Louisiana Revised Statutes 23:1031(C) provides, in pertinent part:

In the case of any employee for whose injury . . . payments are due and who is . . . employed by a borrowing employer in this Section referred to as a "special employer", and is under the control and direction of the special employer in the performance of the work, both the special employer and the immediate employer, referred to in this Section as a "general employer", shall be liable jointly and in solido to pay benefits as provided under this Chapter. . . . The special and the general employers shall be entitled to the exclusive remedy protections provided in R.S. 23:1032.

Lofton and NOV are "entitled to the exclusive remedy protections provided in R.S. 23:1032." We must therefore determine whether the trial court correctly found that Driesse was a borrowed employee for purposes of the LWCA.

At the outset, we note that Lofton is in the business of loaning employees to companies which need to hire temporary workers. "Companies in the business of providing temporary laborers are 'vocational lenders'." *Green v. Popeye's Inc.*, 619 So.2d 69, 73 (La.App. 3 Cir. 1993) (citations omitted). We also look at the following ten-factor test utilized in determining whether an employee has been borrowed from his original employer by a borrowing employer:

> (1) First and foremost, who has the right of control over the employee beyond mere suggestion of details or cooperation; (2) who selected the employee; (3) who paid the employee's wages; (4) who had the right to fire the employee; (5) who furnished the tools and the place to perform the work; (6) whether the new employment was over a considerable length of time; (7) whose work was being done at the time of the accident; (8) whether there was an agreement between the borrowing and lending employers; (9) whether the employee acquiesced in the new work situation; and (10) whether the original employer terminated his relationship with or relinquished his control over the employee.

*Hebert v. Richard*, 10-1417, p. 10 (La.App. 3 Cir. 7/6/11), 72 So.3d 892, 900. Although no one factor is determinative, "the totality of the circumstances must be considered." *Id*. at 900.

According to Adcock's affidavit, Lofton provided NOV with temporary labor as requested by NOV. NOV, in return, paid Lofton a standard fee for every hour worked by a temporary worker, including Driesse. Adcock attested that Driesse was assigned to report to NOV for further instruction. Once Driesse reported to NOV, Adcock attested that NOV had the right of control over Driesse, including the power to dismiss him from the worksite. Adcock attested that while at NOV facilities, Driesse was instructed and supervised by an NOV employee.

7

Adcock stated that NOV had the authority to remove Driesse from the job. Adcock attested that Driesse worked on NOV projects with NOV tools and worked alongside NOV's regular employees.

Based on the above, we find that NOV satisfies factors one, four, five, and seven. We are unable to ascertain whether NOV or Lofton satisfies factor six. We find that Lofton satisfies factors two and three. We find that an agreement existed between Lofton and NOV with respect to factor eight. We find that Driesse acquiesced in the new work situation with respect to factor nine. Finally, we find that Lofton, as the original employer, did not terminate its relationship with Driesse with respect to factor ten.

Our review of foregoing factors shows that Driesse was NOV's borrowed employee for purposes of the LWCA. Accordingly, the trial court's judgment is affirmed in this regard.

### III. Frivolous Appeal

In its answer to the appeal, NOV requests an award of attorney fees to cover the costs associated with defending this frivolous appeal pursuant to La.Code Civ.P. art. 2164. The foregoing statute provides, in pertinent part, that "[t]he court may award damages, including attorney fees, for frivolous appeal or application for writs." Because we find merit in Driesse's appeal, we will not award damages for frivolous appeal.

### DECREE

The judgment of the trial court is affirmed in part, reversed in part, and remanded. Costs of this appeal are assessed against the defendant, National Oilwell Carco, L.P.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

CRAIG DRIESSE

VERSUS

NATIONAL OILWELL VARCO, LP

**KEATY, Judge, dissenting.**

In my view, NOV is not Driesse's employer under the LEDL. The LEDL defines an employer as a "legal or commercial entity, . . . receiving services from an employee and, in return, giving compensation of any kind to an employee." La.R.S. 23:302(2). An employee is defined by the LEDL as "an individual employed by an employer." La.R.S. 23:302(1). Pursuant to the definition of an employer under the LEDL and the jurisprudence interpreting same, NOV can only be considered Driesse's employer if it gave him, individually, compensation "of any kind[.]" La.R.S. 23:302(2); *see Duplessis v. Warren Petroleum, Inc.*, 95-1794 (La.App. 4 Cir. 3/27/96), 672 So.2d 1019 and *Langley v. Pinkerton's Inc. & Capital City Press, L.L.C.*, 250 F.Supp.2d 575 (M.D. La. 2002). In this case, the evidence shows that Lofton, and not NOV, compensated Driesse. The strict definition of an employer under the LEDL, however, requires NOV to compensate Driesse individually and not through "an intermediary" such as Lofton. There is no statutory or jurisprudential authority allowing "an intermediary" to be a substitute for an employer under the LEDL. Although unfair, I believe that the power to change the definition of an employer under the LEDL rests with the legislature and not this court. Accordingly, I would affirm this matter in its entirety.