GRAVOIS, J. |! Defendant/appeilant, Doucette and Associated Contractors, Inc. (“Doucette”), appeals a judgment rendered in favor of plaintiffs/appellees, Donna and Gerald Phillips (“plaintiffs”),[1] in the amount of $20,000.00, together with interest from the date of judicial demand, plus all costs of the proceedings, plus an unspecified amount of attorney’s fees. Doucette also appeals the dismissal of its reconventional demand seeking’damages against plaintiffs for unpaid sums allegedly due under the construction contract the parties entered into. After thorough review and consideration of the law and the entirety of the record, we reverse the judgment in part, finding that the trial court committed manifest error in its award of monetary damages, judicial interest, attorney’s fees, and costs to plaintiffs. In all other respects, the judgment is affirmed. . ' FACTS AND PROCEDURAL BACKGROUND This matter arises out of a contract between the parties for construction of a four-unit apartment building in Jefferson Parish, Louisiana. On May 5, 2005, the parties entered into a fixed-price contract for Doucette to build the apartment building for plaintiffs for $357,032.00. Construction of the building began shortly thereafter, but performance of the contract was soon substantially impaired and delayed by Hurricane Katrina striking the area on August 29, 2005, with the resultant disruption of normal business and scarcity of labor and materials. Though initially a contested point, the evidence shows that as a result of the hurricane’s disruption, the parties, along with Omni Bank, which provided the construction financing for the project, agreed in 2007 to modify the contract to | ¡¡reflect a new price of $383,692.04, an increase of $26,660.04, which was paid to Doucette on August 6, 2007.[2] Doucette alleged that when the project was substantially complete around August of 2007, plaintiffs refused to pay any further sums that Doucette claimed were still due on the project. On October 29, 2007, after the parties failed to arrive at a resolution of the dispute, Doucette filed a lien against’ the property in the amount of $40,000.00, the amount it claimed at that time remained owed by plaintiffs on the project “for additional costs due to Hurricane Katrina.” On January 23, 2008, plaintiffs filed a petition to cancel the “improperly filed” lien and for damages, attorney’s fees, and costs incurred by plaintiffs in connection with removal of the lien. In their petition, plaintiffs denied that any remaining amount was due'Doucette on the project. Plaintiffs also: posted a cash bond with the Jefferson Parish Clerk of Court in order to obtain cancellation of the lien.[3] Doucette filed an answer and recon-ventiorial demand, seeking damages for sums allegedly still due Doucette under the contact. Plaintiffs filed an answer and reconventional demand as well, denying that any amount remained due on the contract, and claiming damages from Doucette for negligence and breach of contract. The parties framed the issues for trial in their joint pre-trial order. Plaintiffs contended that Doucette ceased working on the project in July of 2007, claiming that it had not been paid to complete the job. They asserted that on August 6,2007, they made a last payment to Doucette of $47,414.00, which brought the total amount they paid Doucette, to $383,692.04, the amount the parties agreed to after verbally modifying the contract after Hurricane Katrina. However, according to | ^plaintiffs, Doucette failed to complete the project, requiring plaintiffs to hire additional contractors to complete or correct the plumbing, electrical work, and air-conditioning. Plaintiffs also argued that they were additionally damaged by the alleged improper filing of the lien by Doucette, which, though the lien was cancelled on November 15, 2007, allegedly prevented them from securing permanent financing for the building. Doucette, in the joint pre-trial order, asserted that it completed all of the work contemplated by the contract as amended after Hurricane Katrina, and that plaintiffs failed to pay ifythe full amount owed, which included additional work it performed that was required by the Fire Marshal that was not included in the contract as amended by the parties. Doucette claimed that it was still owed $79,999.60, which included additional costs for interior and exterior work, plus costs incurred for additional work required by the Fire Marshal, plus (as per the contract) 15 percent thereon per month, and attorney’s fees. The matter went to a bench trial on June 27-28, 2016, after which the parties submitted post-trial memoranda. On September 2, 2016, the trial court rendered judgment, awarding $20,000,00 to plaintiffs, together with interest from the date of judicial demand, plus all costs of the proceedings, plus an unspecified amount of attorney’s fees. The judgment further dismissed Doucette’s reconventional demand with prejudice. No reasons for judgment were provided. It is from this final judgment that Doucette appeals.[4] On appeal, Doucette first asserts that the trial court erred in awarding plaintiffs damages, costs, 'and attorney’s fees, arguing that plaintiffs failed to prove by a preponderance of the evidence: 1) that it was Doucette who caused the completion of the project to be delayed; 2) that Dou-cette breached the contract by failing to complete the project; 3) that ‘ Doucette performed defective work on the |4project; and 4) that plaintiffs suffered damages as a result of the lien fíléd by Doucette. 'Dou-cette also.argues on appeal that the trial court erred in dismissing its reconventional demand, asserting that it proved that it was owed additional compensation from plaintiffs due to change orders on the project, and that it is therefore also owed attorney’s fees and liquidated damages pursuant to the contract. ’ In their appellee brief, plaintiffs argue that the' evidence introduced supports the award of $20,000.00 in their favor. Their' brief does not, however, address Dou-cette’s claim on appeal regarding the dismissal of his reconventional demand. ' ANALYSIS This case concerns causes of action for both negligence (plaintiffs’ claim for damages for Doucette’s alleged improper filing of the lien), and breach of contract: (1) plaintiffs’ claims for: a) Doucette’s alleged delay in completion of the project; b) Doucette’s alleged failure to complete the project; and c) Doucette’s alleged defective work on the project; and . (2) Doucette’s claim for-plaintiffs’ alleged failure to pay sums due Dou-cette on the project. In an action to recover damages for injuries allegedly caused by another’s negligence, the plaintiff has the burden of .proving negligence on the part of the defendant by- a preponderance of the evidence. Hanks v. Entergy Corp., 06-0477 (La. 12/18/06), 944 So.2d 564, 678. Proof is sufficient to constitute a preponderance when the entirety of the evidence, both direct and circumstantial, shows the fact sought to be proved is more probable than not. Id. (Internal citations omitted.) In a breach of contract case, ah obligor is liable for the damages caused by his failure to perform a conventional obligation. La. C.G, art. 1994. A failure to perform results from nonperformance, defective performance, of delay in | ¿performance. Id, Damages are measured by the loss sustained by the obligee and the profit of which he has been de-' prived.. La.. C.C. art. 1996. The ,standard for reviewing an award of damages for breach of contract is.whether the trial court abused its discretion. Elliott v. Normand, 07-569 (La. App. 5 Cir. 1/22/08), 976 So.2d 738, 743. (Internal citation- omitted.) In Snider v. La. Med. Mut. Ins. Co., 14-1964 (La. 5/6/16), 169 So.3d 319, 323, rehearing denied, 14-1964 (La. 6/30/15), 2015 La. LEXIS 1501, the Louisiana Supreme Court recently set forth the well-established guidelines for reviewing factual determinations of the trial court, to-wit: It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in ¡the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations -of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. This test dictates that a reviewing, court must do more than simply review the record for some evidence that- may controvert the trial court ruling. Rather, it requires a review of the entire record to determine whether manifest error has 'occurred. Thus, the issue before the court of appeal is not whether the trier of fact was right or wrong, but whether the fact-finder’s conclusion was a reasonable one. The appellate court must not reweigh the evidence or substitute its own factual findings because it would have decided the case differently. Where the fact-finder’s determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous. This rule applies equally to the evaluation of expert testimony, including the evaluation and resolution of conflicts in expert testimony. (Internal citations omitted.) Further, “[w]hen findings are based on determinations regarding the credibility of witnesses, the manifest, error—clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone - of voice that bear so heavily on the listener’s understanding and belief in what is said.” Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). However, “[wjhere documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable 1 ¿fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly, based upon a credibility determination.” Id. at 844-45. , Considering the foregoing principles, we now'turn to a review of the récord as it relates to the issues on appeal in this case. PLAINTIFFS’ CLAIMS FOR DAMAGES In" this case, the judgment awarded plaintiffs damages in the amount ' of $20,000.00, an amount that does not clearly correlate to any particular item of damages plaintiffs" claimed in their post-trial memorandum. Therein, plaintiffs claimed over $400,000.00 in damages: lost rental income ($120,000.00); interest payments they allegedly incurred from the filing of the lien until trial, allegedly due to their inability to secure permanent- financing ($284,160.45); damages for items not finished ($4,281.00); and attorney’s fees ($18,701.57). The judgmént did not state reasons for the award, and therefore the trial court’s basis for the award is unknown.[5] ' ‘ Damages for delay in completion of the project Doucette first argues that plaintiffs failed to prove that its actions' caused a delay in the completion of the project. The construction contract between' Doucette and plaintiffs was entered into evidence';' it contained, however, no hard completion date for the project. A letter from Dou-cette to plaintiffs dated May 5, 2005 was also introduced: into evidence.- It stated: “The beginning date of driving pilings for the new construction is 05/20/05 and completion date is noted as 09/20/05. with weather permitting.” Plaintiffs, claimed that this completion date, pertained to the entire project; Doucette claimed it pertained only to the pile-driving portion of the contract and not to completion of a structure whose size was over 5000 square 17feet.[6] In any event, the parties clearly agreed that Hurricane Katrina intervened to disrupt and delay the project. The parties testified that the delays pertained both to general conditions in the metro New Orleans area, as well as shortages in labor and building materials. Plaintiffs’ exhibits failed to establish a project completion date agreed to by the parties. The project was completed in the fall of 2007, as evidenced by the temporary certificate of occupancy granted in October of 2007. No other evidence was introduced by plaintiffs tending to show what the expected date of completion was, nor that the completion date in the fall ■ of 2007 was itself unreasonable or caused-by the actions of Doucette. Plaintiffs’ exhibits do not show that plaintiffs were unsatisfied-with the pace of work. Therefore"; to the extent that the trial court’s award might have been based upon delays in completion of the project, we find that the trial court committed manifest error in awarding plaintiffs damages in this regard. Based on our review of the entirety of the record, we find that a reasonable fact finder, would not credit Mrs. Phillips’s testimony, evidence, and arguments that the project was in fact delayed, given the dire lack of evidence of a completion date after the intervention of Hurricane Katrina, or that a delay was caused by Doucette. Rosell v. ESCO, supra. Damages for failure to complete the project Doucette next argues that plaintiffs failed to prove that he failed to complete the project, causing them to incur an additional $4,241.00 for air-conditioning, electrical, and plumbing issues. In their post-trial memorandum, plaintiffs argued that three invoices from Mister Sparky for electrical work, one invoice from Blair | ^Plumbing, Inc. to correct a plumbing problem, and one invoice from ARC Air, Inc. for air-conditioning work, constituted proof of Doucette’s failure to complete the project. First, we find that the invoices from Mister Sparky do not support plaintiffs’ claim that they pertained to work left unfinished by Doucette. The first invoice, dated November 19, 2007, was to repair a loose wire to an on/off switch in the dining room of an unspecified unit. The invoice is dated after occupancy of the units, and pertains to a repair, not to unfinished work. The second invoice is dated February 11, 2008 and described the work as fixing a light in the stairwell and another repair in Apt. “C.” The third invoice, dated March 10, 2008, also described a repair, not unfinished work. Likewise, Mrs. Phillips-testified that the invoice from Blair Plumbing, which was dated June 24, 2009, well after the units were occupied, was an estimate to correct some plumbing issues, and that Blair Plumbing did not in fact perform the work. Also, the date of the invoice indicates that the estimate was made well after the completion date (October of 2007) and after actual occupancy of the units, and thus does not support plaintiffs’ claim that this was an item that Doucette failed to complete. Finally, the ARC Air, Inc. invoice, dated October 25, 2007, for $600.00, pertained to starting up “the equipment at the new apartment complex,” four digital thermostats, and labor. Mrs. Phillips presented no testimony or evidence that this invoice pertained to a construction deficiency left undone by Doucette, nor that, she gave Dou-cette an opportunity to cure the same. Importantly, plaintiffs failed to present any testimony from representatives of Mr. Sparky, Blair Plumbing, Inc., or ARC Air, Inc. to explain the respective invoices from said entities and to confirm and verify that these invoices 19specifically pertained to construction items on the subject project left unfinished by Doucette. Accordingly, plaintiffs’ claims that Doucette left these items unfinished are clearly not supported by the invoices and evidence introduced at trial and emphasized to the trial court by plaintiffs in their post-trial brief. Thus, the evidence presented does not support the trial court’s damage award to plaintiffs.[7] Accordingly, to the extent that the trial court’s award might have been based upon these claims, we find that the trial court committed manifest error in awarding plaintiffs damages in this regard. Based on our review of the entirety of the record, we find that a reasonable fact finder would not credit Mrs. Phillips’s testimony, evidence, and arguments that Doucette failed to complete the project, causing plaintiffs to incur an additional $4,241.00 for air-conditioning, electrical, and plumbing issues. Rosell v. ESCO, supra. Damages for defective construction work Plaintiffs next claimed that they were damaged by Doucette’s defective construction work, and that they thus had to spend additional money to correct the defective work. Though plaintiffs did not discuss this claim in their post-trial memorandum or -with any' specificity in their ap-pellee brief, their petition claimed damages for defective work and Mrs. Phillips testified that certain defective work was performed by Doucette. The law is well settled that in claims against a contractor for defective construction, an owner “bears the burden of proving 1) both the existence and nature of the defects, 2) that the defects were due to faulty materials or workmanship, and 3) the cost of repairing the defects.” Guy T. Williams Realty, Inc. v. Shamrock Constr. Co., 564 So.2d 689, 693 (La. App. 5th Cir. 1990) (internal citations omitted), writ denied, 569 So.2d 982 (La. 1990). However, plaintiffs failed to bear their burden of proof in this regard. First, plaintiffs .claimed as defective work some of the same items that they also claimed as unfinished work by Dou-cette: in particular, the electrical, plumbing, and air-conditioning items discussed above. For the same reasons as previously stated, these’ invoices do not support a finding that Doucette’s work was defective, as in the case of the electrical and plumbing invoices, which were dated well after the units were occupied and could have been attributable to other factors, such as normal use or intervention by tenants. The ARC Air, Inc. invoice pertains to starting up the air-conditioning units and does not describe repairs or defective work. Likewise, photos taken of paint issues and plumbing problems, some of which were taken and dated well after occupancy (in the case of plumbing leaks, invoices were dated in 2009 and some photos were dated in 2014), do not reasonably prove by a preponderance of the evidence that these items were attributable to defective work by Doucette, who last worked on the project in 2007. Accordingly, there is-no evi-dentiary support for an award in favor of plaintiffs and against' Doucette for defective work. . . Thus, to the extent that the trial court’s award might have been based upon alleged defective work performed by Doucette, we find that the trial court committed manifest error in awarding plaintiffs damages in this regard.- Based on our review of the entirety of the record, we find that a reasonable-fact finder would not credit Mrs. Phillips’s testimony, evidence, and arguments that Doucette performed defective work. Rosell v. ESCO, supra. Damages for improper tiling of lien Plaintiffs argued to the trial court, and in their post-trial brief, that • Dorn cette’s “malicious” filing of the lien against the property damaged them in two ways: they had to post a cash bond to release the hen, and the lien prevented them [nfrom securing permanent financing. However, a review of the evidence presented by plaintiffs is entirely lacking and does not reasonably meet their burden of proof on this claim. Doucette filed the lien in October of 2007. (The documents plaintiffs introduced from various lenders regarding their loan applications date from earlier in 2007, pri- or to the filing of the lien, and thus cannot support plaintiffs’ contentions. Further, the lenders’ documents state that plaintiffs’ loan was not yet approved for lack of necessary documentation, not because of the lien, which eventually they provided, securing a permanent loan sometime in 2008. None of the pertinent exhibits introduced by plaintiffs show that .plaintiffs were turned down for a loan because of the lien. Likewise, a credit report obtained for the purpose of financing and introduced into evidence does not report the' lien. Plaintiffs did not .call a witness from any bank or lending institution to support their allegations that the lien prevented- them from securing a loan. Moreover, Mrs. Phillips testified that they did, in fact, secure a permanent loan for the project. Likewise, the evidence failed to reasonably establish that plaintiffs suffered damages from posting a bond to cancel the lien. Mrs. Phillips testified that they posted a cash bond, for which they did not have to borrow funds, and that such funds were returned to them when the lien was cancelled. Thus, plaintiffs did not reasonably bear their burden of proof that they sustained damages by the- allegedly improper filing of the lien by Doucette. The evidence presented does not reasonably support a damage award by the trial court on this claim. Thus, to the extent that the trial.court’s award might have been based upon the allegedly improper filing of the lien by Doucette, we find that the trial court committed manifest error in awarding plaintiffs, damages, in this regard. Based on our review of the entirety of the record, we find that a reasonable .fact finder would not credit Mrs. Phillips’s testimony, evidence, and .arguments that Doucette caused 1^plaintiffs damages for the allegedly improper filing of the lien. Rosell v. ESCO, supra. Conclusion as to plaintiffs’ claims for damages -For the foregoing reasons, based on our review of the entirety of the record, we find that because the documents and objective evidence introduced so contradict Mrs. Phillips’s story- and her story is so internally inconsistent and implausible on its face, a reasonable fact finder would not credit her testimony, evidence, and arguments that Doucette caused plaintiffs damages on any of their claims .for any amount. We thus, find that the trial court committed manifest error in awarding $20,000.00 in damages to plaintiffs. We accordingly reverse the trial court’s award of $20,000.00 in damages to plaintiffs, along with the portion of the judgment that awards judicial interest, attorney’s fees, and costs to plaintiffs.[8] DOUCETTE’S RECÓNVENTIONAL DEMAND FOR DAMAGES Doucette argues in brief that the trial court erred in dismissing his recon-ventional demand with prejudice, asserting that he proved by a -preponderance of the evidence that plaintiffs failed to pay him for additional work necessitated by Hurricane Katrina that he performed on the subject construction project. However, upon review, for the following reasons, we find no error in the trial court’s judgment dismissing Doucette’s reconventional demand. As previously noted, the parties entered into a fixed-price contract. The legal consequences of such a contract are that the builder will only recover the fixed price for completion of, the work, regardless of his actual costs, unless the buyer makes changes in the plans and specifications which increase the final cost. Allan E. Amundson, Inc. v. Hoppmeyer, 442- So.2d 1254, 1256 (La. App. 5th Cir. 1983). The builder bears the burden of proving both the buyer’s authorization for, and the cost of any changes made. Id., citing Roberts v. Rolene Corp., 415 So.2d 546 (La. App. 1st Cir. 1982). This Court has previously noted that the evidence supports the finding that the parties agreed in August of 2007 to increase the cost of the contract, and thus the construction loan, by $26,660,04, based upon records of increased costs that Doucette furnished to plaintiffs that were approved by Omni Bank and included in the August 6, 2007 payment to Doucette.[9] However, upon' review, we find that Doucette did not reasonably bear its burden of proof by a preponderance of the evidence that plaintiffs agreed to any further changes dr increased costs. At trial, Doucette introduced a plethora of receipts from a wide range of dates, some dated prior to the bank’s August 6, 2007 payment to him of increased costs, and some dated subsequent thereto. There was no evidence, though, that the parties had reached a second agreement regarding these further costs not included in the August 6, 2007 payment.[10] Thus, based on our review of the entirety of the record, we find that the trial court reasonably did not credit Doucette’s testimony, evidence, and arguments that the parties agreed to additional changes in the contract price beyond the increased expenses- included in- the payment to Dou-cette on August 6, 2007. Rosell v. ESCO, supra. Accordingly, the trial court did not commit manifest error in failing to -award damages to Doucette and in dismissing Doucette’s reconventional demand. | ^CONCLUSION For the foregoing reasons, we reverse the trial court’s award of damages, judicial interest, attorney’s fees, and costs to plaintiffs. We further affirm the trial court’s dismissal of Doucette’s reconventional demand. Costs of the appeal are assessed to plaintiffs. REVERSED IN PART, AFFIRMED IN PART . Between the filing of the suit and the date of trial, Mr. Phillips passed away; Mrs. Phillips proceeded at trial as plaintiff. . The extra $26,660.04 was included in a "final payment on the contract” in the amount of $47,414.00 paid to Doucette on August 6, 2007. .The record reflects that plaintiffs posted a cash bond in the amount of $50,000.00 with the Jefferson Parish Clerk of Court on November 15, 2007, on which date the Clerk of Court issued a Notice of Cancellation of the lien. Doucette also filed an affidavit authorizing cancellation of the lien with the Clerk of Court on February 13, 2008. . Plaintiffs did not appeal the judgment. . Despite seeking over $400,000.00 in damages, as argued in their post-trial memorandum, plaintiffs did not (as noted above) appeal the damage award as inadequate. . In their post-trial memorandum, plaintiffs argued two different completion dates upon which their damages should be calculated: September 20, 2005, as found in the "pile-driving” letter, and January 5, 2006, as evidenced in a statement contained in the Notice of Lien filed by Doucette on October 12, 2007. However, the lien document states, that there was "no date specified” with respect to completion of the construction, and lists January 5, 2006 as the date final payment would be made to Doucette, in accordance with the construction contract. . Plaintiffs also argue in brief to this Court that they had to hire an attorney to obtain the right to occupy the property, and had to hire a locksmith as Doucette failed to relinquish the keys to the property. The record shows that Mrs. Doucette testified as such; however, plaintiffs did not claim damages for a locksmith or present an invoice regarding this claim. Likewise, while plaintiffs claimed they were entitled to attorney's fees, such an award is dependent upon plaintiffs succeeding' in their breach of contract claims, and is not an independent cause of action. . A party may only recover attorney’s fees if provided for by contract or statute. Rivnor Properties v. Herbert O'Donnell, Inc., 92-1103 (La. App. 5 Cir. 1/12/94), 633 So.2d 735, 749. The contract between the parties contained a provision regarding attorney’s fees. Given that the judgment in-favor of plaintiffs is reversed, the award of judicial interest, attorney’s fees, and costs necessarily fails as well. . Mrs. Phillips, the only witness presented by plaintiffs at trial,- testified that the- parties never agreed to any change orders, and no writings reflect any change orders. However, she also testified that in 2007, as the result of a meeting between plaintiffs, Doucette, and the loan officer with Omni Bank, the bank in- ' creased the construction loan amount by $26,660.04, based on documentation of particular expenses supplied by Doucette. She testified that she and her husband did not "agree” to this change, but they also did not prevent the payment to Doucette, or take action against the bank in any way, thus agreeing to the $26,660.04 increase in the contract price by acquiescence. . Regarding the corrections required by the Fire Marshal, Mrs. Phillips also testified that Doucette performed the work, but that the architect agreed to pay for the increased costs, since the necessity for the additional work was attributable to deficiencies in the architectdral plans.