JOHNSON, J.
Defendant/Appellant, Louisiana Health Service & Indemnity Company d/b/a Blue Cross Blue Shield of Louisiana (hereinafter referred to as "Blue Cross"), appeals the judgment in favor of Plaintiff/Appellee, Joanell M. Darnell, M.D., from the 24th *506 Judicial District Court, Division "P," for damages associated with the breach of the duty of good faith and fair dealing. For the following reasons, we affirm the judgment.
FACTS AND PROCEDURAL HISTORY
The facts relevant to the instant appeal are as follows.
Dr. Darnell joined the Blue Cross network as a healthcare provider in 1986 as a licensed obstetrician and gynecologist. On December 1, 2003, Blue Cross terminated Dr. Darnell as a network provider for a one-year period. During the termination process, Dr. Darnell had telephone conversations and written correspondence with a Blue Cross representative regarding her reapplication and readmission into the network.
In December 2004, Dr. Darnell sued Blue Cross for various causes of action, namely: malicious prosecution, defamation, intentional infliction of emotional distress, intentional misrepresentation and abuse of right. Dr. Darnell attempted to apply for readmission into Blue Cross' provider network in 2007; however, her application was denied because she had an ongoing litigation against Blue Cross. Years later, on October 4, 2013, the parties entered into a "Settlement Agreement, Receipt and Release" (hereinafter referred to as "Settlement Agreement") for any and all damages arising from the termination of Dr. Darnell from Blue Cross' network. Dr. Darnell's 2004 action against Blue Cross was subsequently dismissed with prejudice.
In December 2013, after the completion of her prior litigation against Blue Cross, Dr. Darnell applied for reinstatement into the Blue Cross healthcare provider network. Blue Cross denied Dr. Darnell's application on February 13, 2014. In response, Dr. Darnell filed the instant action against Blue Cross on June 16, 2014.
In her "Petition for Declaratory Judgment and for Damages," Dr. Darnell asserted she was entitled to declaratory relief that would declare Blue Cross' denial of her application for readmission to be null and void and without any force or effect. Additionally, Dr. Darnell alleged that she had met Blue Cross' terms for her readmission into the network, and Blue Cross discriminated against her when it denied her readmission. Dr. Darnell further alleged she incurred damages due to Blue Cross' unfair trade practices and breach of its duty of good faith and fair dealing.
Prior to trial, on January 26, 2017, Dr. Darnell filed a "Motion to Strike Trial Exhibit," seeking to exclude the Settlement Agreement from evidence. The trial court took the motion under advisement. Blue Cross filed peremptory exceptions of res judicata and no cause of action on February 6, 2017, asserting Dr. Darnell was barred from raising claims that could have been litigated in her prior lawsuit and she had no valid cause of action. Those exceptions were overruled by the trial court on February 8, 2017, and the matter proceeded to a bench trial on the merits on February 13, 2017. At the conclusion of the trial, the trial court took the matter under advisement and allowed the parties to submit post-trial memoranda. On February 14, 2017, the trial court rendered a judgment granting the motion to strike and struck the Settlement Agreement from Blue Cross' exhibit list. The trial court later rendered a judgment on the merits of the petition on June 30, 2017.
In its judgment, the trial court awarded Dr. Darnell a total of $429,736.18 in damages against Blue Cross, which included $325,261 for past loss; $49,371 for future loss; and $55,104.18 for "breach." In its *507 "Reasons for Judgment," the trial court found Dr. Darnell's testimony credible, while also finding portions of Blue Cross' representatives' testimonies incredible because their explanations were inconsistent and illogical. It opined that Blue Cross made a decision to deliberately cause damage to Dr. Darnell's reputation and business practice. The court found that the representations of Blue Cross' representative to Dr. Darnell created a contractual relationship between Blue Cross and Dr. Darnell, and Dr. Darnell accepted Blue Cross' offer by fulfilling the conditions set forth through its representative. The court further found that Blue Cross breached its duty of good faith and fair dealing by knowingly refusing to admit Dr. Darnell into the network, even though she satisfied all of Blue Cross' requirements for readmission. The instant suspensive appeal followed.
ASSIGNMENTS OF ERROR
On appeal, Blue Cross alleges the trial court erred in: 1) overruling its peremptory exceptions of res judicata and no cause of action; 2) granting Dr. Darnell's motion to strike; 3) finding that a contractual relationship came into existence between Blue Cross and Dr. Darnell from an alleged contract made in 2003; 4) awarding Dr. Darnell economic damages for past loss and future loss; and 5) awarding Dr. Darnell damages for a breach.
LAW AND ANALYSIS
Exceptions of Res Judicata [1] and No Cause of Action [2]
Blue Cross alleges the trial court erred in overruling its peremptory exception of res judicata on the basis that it was filed after the deadline for filing dispositive motions in the matter. Blue Cross argues that its exception was based on both the Settlement Agreement and the order entered in Dr. Darnell's first lawsuit that dismissed her claims against it with prejudice. It contends that Dr. Darnell's claims became exigible in 2007 and could have been asserted in her first lawsuit; thus, they are barred now by application of the principle of res judicata .
Dr. Darnell avers the trial court properly overruled Blue Cross' exception of res judicata because her two actions against Blue Cross arose from different transactions.
The peremptory exception may be pleaded at any stage of the proceeding in the trial court prior to a submission of the case for a decision. La. C.C.P. art 928. In this matter, Blue Cross filed its exception of res judicata on February 6, 2017, a few days prior to the scheduled trial date. The trial court, subsequently, denied the exception. Prior to the start of the trial, the trial judge explained that the exception was denied because it was filed after the "cutoff"
*508 dates had passed, and the court was not considering any substantive motions at that time. Pursuant to La. C.C.P. art. 928, we find the trial court erred in overruling the peremptory exception on the basis that it was filed after the deadline had passed for filing dispositive motions, as it could have been pleaded at any stage prior to submission of the case. However, we find the error was harmless because this Court will address the merits of Blue Cross' exception of res judicata .
Appellate courts review exceptions of res judicata using the de novo standard of review because these exceptions present legal questions. McLean v. Majestic Mortuary Servs. , 11-1166 (La. App. 5 Cir. 5/22/12), 96 So.3d 571, 575. Louisiana's law concerning res judicata is set forth in La. R.S. 13:4231, which provides:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
The Louisiana Supreme Court has established the following five elements that must be satisfied for a finding that a second action is precluded by res judicata : 1) the judgment is valid; 2) the judgment is final; 3) the parties are the same; 4) the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first litigation; and 5) the cause or causes of action in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. Jenkins v. Jackson , 16-482 (La. App. 5 Cir. 2/22/17), 216 So.3d 1082, 1092, writ denied , 17-652 (La. 9/6/17), 224 So.3d 984.
In the case at bar, Dr. Darnell's second petition alleged she reapplied for admission as a network provider with Blue Cross after her first litigation against Blue Cross for improper and unlawful actions in terminating her from the healthcare provider network had been settled in 2013. Dr. Darnell asserted she was harmed as a result of Blue Cross' negligent handling of her application and its continued refusal to respond to her requests for information on the reason for denial. She also asserted Blue Cross refused to readmit her because she exercised her right to sue Blue Cross for illegally terminating her without cause. Dr. Darnell sought a judgment declaring Blue Cross' declination of her application for readmission as a provider in the network be null and void and without any force or effect. She also sought damages associated with her claims of unfair trade practices and breach of covenant of good faith and fair dealing. In contrast, Dr. Darnell's first lawsuit was premised upon her termination as a provider in Blue Cross' network.
*509 Because the first action arose from Dr. Darnell's termination as a provider in Blue Cross' network and the second action arose from Blue Cross' denial of Dr. Darnell's readmission into the network, Blue Cross has failed to prove the fifth element for a finding that the second action is precluded by res judicata : the cause or causes of action in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. See , Jenkins , supra . The causes of action in the two lawsuits arose from different transactions with Blue Cross; thus, the instant action is not precluded by res judicata . Therefore, after de novo review, we find that Blue Cross' exception of res judicata was properly overruled by the trial court.[3]
Motion to Strike
Blue Cross alleges the trial court erred in granting Dr. Darnell's "Motion to Strike" and retroactively excluding the Settlement Agreement after the trial had concluded. It contends that the Settlement Agreement is relevant to both the breach of contract and the calculations of the damages and should have been considered by the trial court. It further contends that Dr. Darnell's counsel did not object to the Settlement Agreement at the time it was offered. As a result, Blue Cross urges this Court to reverse the trial court's ruling and give the Settlement Agreement due consideration.
Dr. Darnell avers there was an objection raised to the introduction of the Settlement Agreement in the pre-trial stage. Dr. Darnell further avers the Settlement Agreement cannot be considered now because Blue Cross failed to proffer it into evidence.
During the hearing on Dr. Darnell's motion to strike, counsel for Dr. Darnell argued that consideration of the Settlement Agreement was not relevant to the case and it would pose a problem for the confidentiality of the other parties involved in the settlement. In response, counsel for Blue Cross urged the trial court to consider the Settlement Agreement to determine the scope of Dr. Darnell's release and its effect on her request for damages. At the conclusion of the arguments, counsel for Blue Cross suggested the trial judge reserve his ruling on the motion until testimony on the basis of Dr. Darnell's damages claims was presented, and the trial court took the matter under advisement. In its February 14, 2017 judgment, the trial court granted Dr. Darnell's motion and struck the Settlement Agreement from Blue Cross' exhibit list.
The grant or denial of a motion to strike is reviewed under the abuse of discretion standard. Detillier v. Borne , 15-129 (La. App. 5 Cir. 9/23/15), 176 So.3d 669, 671, citing Pitre v. Opelousas Gen. Hosp. , 530 So.2d 1151 (La. 1988). The granting of a motion to strike rests in the sound discretion of the trial court. Id.
After review, there is no indication that the trial court abused its discretion in *510 granting the motion to strike. The Settlement Agreement from Dr. Darnell's first action against Blue Cross involved the resolution of the issues and damages resulting from her termination as a network provider in 2003, not issues pertaining to the denial of her readmission in 2014. Blue Cross has failed to prove the relevance of the Settlement Agreement in connection to the 2014 breach of contract. Furthermore, as will be discussed infra , the damages resolved in the Settlement Agreement were excluded from the calculations for the damages awarded to Dr. Darnell for past and future losses and breach of contract in the instant matter. Consequently, Blue Cross has also failed to prove the relevance of the Settlement Agreement in correlation to the damages awards. Therefore, we cannot find the trial court abused its discretion in granting Dr. Darnell's motion to strike and excluding the Settlement Agreement between Dr. Darnell and Blue Cross.
Contract and Breach Award [4]
Blue Cross alleges the trial court erred in awarding Dr. Darnell $55,104.08 in damages for breach of contract, as there was no contractual relationship that existed between it and Dr. Darnell. It argues that the written documentation-its letters sent to Dr. Darnell in 2003-was clear that Dr. Darnell would be allowed to reapply for admission into the network, and there was never any promise or guarantee to enter into a contract with her for readmission. It contends that the duty of good faith and fair dealing that arises when a contract comes into existence simply does not provide a basis for an award of damages in favor of Dr. Darnell in this matter. Alternatively, Blue Cross argues that the delay of Dr. Darnell's acceptance of its alleged offer in 2013 was unreasonable and untimely.
Blue Cross further argues Dr. Darnell never pleaded a breach of contract theory of recovery; thus, it was prejudiced by that theory of recovery being used as the sole basis for the trial court's judgment. To the extent the trial court based its breach award on the amount Dr. Darnell paid to Blue Cross in connection with her 2003 termination from the network, Blue Cross contends the trial court erred in awarding damages based on the breach of contract theory.
Dr. Darnell maintains that the evidence presented at trial unequivocally proves that she was informed that she would be readmitted into the Blue Cross healthcare provider network if she met the requisite conditions. She avers that she did exactly as directed by Blue Cross and complied with the terms, conditions and demands; yet, she was still denied readmission. Dr. Darnell contends that despite its repeated assurances and conditions for her readmission and her reliance upon them, Blue Cross ultimately never intended to readmit her into the network and uphold its contractual obligation. As a result, Dr. Darnell argues Blue Cross breached its duty of good faith and fair dealing.
At trial, Thomas Groves was called as a witness during Dr. Darnell's presentation of evidence. From 2000 to 2005, Mr. Groves was the Regional Manager of Network Development for Blue Cross for the Baton Rouge and New Orleans markets. He later became the Director of Network Development and was promoted to Vice-President from 2009 to 2014.[5] Mr. Groves *511 testified Dr. Darnell was terminated from the network in 2003 after an audit of her records. He was the manager who sent Dr. Darnell the October 14, 2003 termination letter. In that letter, Mr. Groves stated, in pertinent part,
After one year, you may reapply for participation in all of our networks subject to the following conditions: 1. all monies owed to [Blue Cross] and HMOLA are paid back in full, and 2. you are able to demonstrate that all coding and documentation discrepancies are corrected and correct coding can be followed to sufficiently file claims.
Although the termination letter did not state a specific reason for Dr. Darnell's termination from the network, Mr. Groves affirmed that he told Dr. Darnell, "Look, repay the money. Stay out a year, reapply, and you'll get back in[,]" during their conversations regarding her termination.
After Dr. Darnell repaid $55,104.18 to Blue Cross, Mr. Groves sent Dr. Darnell a second letter on December 30, 2003. That letter acknowledged receipt of the repayment, thanked Dr. Darnell for her quick response, and informed her that she had satisfied her obligation for that portion of her commitment. The letter further stated,
As previously discussed, you may reapply for participation in all of our networks after one year from the date of termination if you are able to demonstrate that all coding and documentation discrepancies are corrected and correct coding can be followed to sufficiently file claims.
Mr. Groves testified that he was aware that Blue Cross declined to contract with Dr. Darnell in 2014, after she reapplied in 2013. He affirmed that the business decision to not contract with Dr. Darnell was based upon its previous dealings with her, which originated from billing discrepancies and medical records issues when she was in the network. Mr. Groves later testified that he told Dr. Darnell that she had "the right to apply." When questioned directly by the trial judge about the 2014 readmission denial, Mr. Groves stated that it was the decision of senior management-to which he was partially involved-to not let Dr. Darnell "back in or let her reapply, rather." He explained that the decision was made prior to Dr. Darnell's meeting with Blue Cross' representatives but could not recall the exact date.[6]
Dr. Darnell testified that she had discussions with Mr. Grove regarding the conditions she had to meet in order to be readmitted into the provider network. She stated that she believed she would be readmitted into the network and would not have outright repaid the $55,104.18 to Blue Cross-as she would have thoroughly reviewed every charge-if she would have known Blue Cross would not honor her agreement made with Mr. Groves. She affirmed that she acquired the coding credentials. Dr. Darnell also testified she first attempted to reapply to Blue Cross' provider network in 2007, but she was denied readmission because of the pending litigation she had against Blue Cross.
During Blue Cross' presentation of evidence, Tabatha Marchand was called as Blue Cross' corporate representative. She was the Manager of Blue Cross' Network Operations. Although Ms. Marchand was presented as the corporate representative for this case, she testified that she did not know the exact details of what was agreed upon with Mr. Groves and was not involved *512 in the termination. During her testimony, Ms. Marchand stated that she had knowledge of the denial of Dr. Darnell's 2007 reapplication and disclosed that Dr. Darnell would not have been readmitted into the network any sooner than 2013 because of the pending litigation.
Ms. Marchand's February 13, 2014 denial letter to Dr. Darnell stated, in pertinent part,
We received and reviewed your application for participation in our health plan. At this time, [Blue Cross] must decline to accept your application to participate in [Blue Cross'] networks. When you were terminated in 2003, a number of areas of concern were identified and explained to you. Events subsequent to that termination do not show any actual attempt on your part to correct the problems which led to that termination.
Ms. Marchand testified that Dr. Darnell's 2013 application was evaluated based upon her credentials, and Dr. Darnell's application met the credentialing requirements. However, Dr. Darnell's application was denied prior to reaching the next step of the application process.
In its "Reasons for Judgment," the trial court found that Blue Cross breached its duty of good faith and fair dealing by knowingly refusing to readmit Dr. Darnell into its network and opined that Blue Cross deliberately caused damage to Dr. Darnell's reputation and business practice. It also found that Mr. Groves' representations to Dr. Darnell created a contractual relationship, to which Dr. Darnell accepted through the fulfillment of the conditions set forth by Mr. Grove. The trial court further found that portions of the testimonies of Mr. Groves and Ms. Marchand were incredible.
The judicial determination of good-faith (or bad faith) failure to perform a conventional obligation is always preceded by a finding that there was a failure to perform or a breach of the contract. Ledet v. Campo , 12-1193 (La. App. 3 Cir. 3/6/13), 128 So.3d 1034, 1039, citing Favrot v. Favrot , 10-986 (La. App. 4 Cir. 2/9/11), 68 So.3d 1099, 1110. The matter at bar involves an alleged oral contract. In DBR Assocs., L.L.C. v. Burnell , 15-629 (La. App. 5 Cir. 2/24/16), 186 So.3d 1225, 1229-30, this Court explained the following concerning the review of oral contracts:
A contract is formed by the consent of the parties established through offer and acceptance. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally. If the amount of compensation a party is to receive was not agreed upon when the contract was formed, the law will imply in the contract a provision that the party would be paid a reasonable sum for his services.
La. C.C. art 1846 provides that an oral contract in excess of $500.00 must be proven by at least one credible witness and other corroborating circumstances. Only general corroboration is required, and it is not necessary for the plaintiff to offer independent proof of every detail. (Internal citations omitted).
The existence or non-existence of a contract is a question of fact. Ocampo v. Maronge , 17-403 (La. App. 5 Cir. 12/27/17), 237 So.3d 627, 634, citing Read v. Willwoods Cmty , 14-1475 (La. 3/17/15), 165 So.3d 883, 887. Similarly, the issue of whether there were corroborating circumstances sufficient to establish an oral contract is a question of fact. Id.
Here, Dr. Darnell testified she had discussions with Mr. Groves concerning her readmission into Blue Cross' network as a provider. These discussions occurred before and after Dr. Darnell received the October 14, 2003 notice that she would be *513 terminated from the network. The October 14th letter from Blue Cross stated Dr. Darnell could reapply for participation in the network after one year if two conditions were met: 1) full payment of the money owed, and 2) demonstration that all coding and documentation discrepancies were corrected. After receiving the payment, Dr. Darnell received the December 30, 2003 letter informing her she could reapply after one year upon demonstration that all coding and documentation discrepancies were corrected. Although both the October 14th and December 30th letters informed her that she could reapply, Dr. Darnell attested that Mr. Groves gave her assurance she would be readmitted into the provider network if she met certain conditions. Mr. Groves' testimony corroborates Dr. Darnell's assertion when he affirmed that he told her, "Look, repay the money. Stay out a year, reapply, and you'll get back in." The conditions set forth in the letters confirm Dr. Darnell's assertion that Mr. Groves set forth terms for her to be readmitted. Accordingly, we find that the letters, in conjunction with the testimonies of Dr. Darnell and Mr. Groves, provided sufficient corroborating circumstances to establish that an oral contract was made between Dr. Darnell and Blue Cross.
In reference to Blue Cross' alternative argument that the delay of Dr. Darnell's acceptance in 2013 of its alleged offer was unreasonable and untimely, we find that argument has no merit. According to the testimony presented at trial, Dr. Darnell submitted her first application for readmission in 2007. That application was denied by Blue Cross, specifically, because Dr. Darnell had a pending litigation against it. Ms. Marchand's testimony corroborated that Dr. Darnell would not have been admitted into the network any sooner than 2013 because of the ongoing litigation. Although the determination that Dr. Darnell would not be allowed to reapply was made by senior management in 2003, Blue Cross led Dr. Darnell to believe that she was only being denied because of the pending litigation and could reapply after the litigation was over. In other words, Blue Cross extended the time frame for Dr. Darnell to accept its offer. Dr. Darnell reapplied within three months of the settlement of the litigation. In this particular situation, we find that Dr. Darnell's acceptance of Blue Cross' offer in 2013 was not unreasonable or untimely.
After review of the evidence presented at trial, there is support for the trial court's factual finding that there was a contractual relationship between Dr. Darnell and Blue Cross. Accordingly, we cannot find the trial court erred in its determination.
Furthermore, we note the trial court found in its "Reasons for Judgment" that Blue Cross breached its duty of good faith and fair dealing, which was a theory of recovery alleged in Dr. Darnell's petition. Blue Cross' argument to this Court that it was prejudiced by the breach of contract theory of recovery being used as the sole basis for the trial court's judgment is disingenuous. As previously mentioned, the judicial determination of good-faith (or bad faith) failure to perform a conventional obligation is always preceded by a finding that there was a failure to perform or a breach of the contract. See , Ledet , supra . However, a review of Dr. Darnell's petition reveals that the facts constituting a claim for breach of contract were alleged, and there was sufficient evidence presented at trial to support that theory of recovery. Thus, even if the trial court had based its decision simply on the breach of contract theory, it would not have done so in error.[7]
*514 The standard of reviewing an award of damages for breach of contract is whether the trial court abused its discretion. Phillips v. Doucette & Associated Contractors, Inc. , 17-93 (La. App. 5 Cir. 10/25/17), 229 So.3d 667, 672.
In this matter, there was no evidence presented at trial concerning an amount associated with the contract between Dr. Darnell and Blue Cross. The trial court awarded Dr. Darnell $55,104.18, which coincides with the amount Dr. Darnell repaid to Blue Cross, as a reasonable sum for damages for Blue Cross' breach. After finding there was sufficient evidence to support the trial court's determination regarding the contract, we cannot find the trial court abused its discretion in awarding Dr. Darnell $55,104.18 for breach of Blue Cross' duty of good faith and fair dealing.
Economic Damages Awards
Blue Cross alleges the trial court erred in awarding Dr. Darnell damages for past and future losses. It contends that, according to Dr. Darnell's tax returns and testimony at trial, Dr. Darnell virtually had no medical practice and no income from early 2000 through 2002, as she left her own medical practice in 2000 to care for her husband. It further contends that Dr. Darnell only practiced for an estimated six to eight months in 2003; worked on a part-time basis in another office in 2007, where she only saw patients 2 ½ days per week; ultimately ceased her obstetrics practice, the most lucrative part of her practice, in 2007; and had her clientele taper off to almost nothing by 2013. Consequently, Blue Cross asserts Dr. Darnell has no legally supportable claim against it for lost earnings in 2013 or any subsequent year because her practice had dwindled to nothing long before October 2013.
When referencing the testimony of Dr. Darnell's expert, Ralph A. Litolff, Jr., Blue Cross argues that Mr. Litolff's methodology was unreliable when computing Dr. Darnell's damages. Blue Cross asserts Mr. Litolff was instructed to disregard Dr. Darnell's actual statements and practice history by Dr. Darnell's attorney and presume Dr. Darnell would have a thriving OB/GYN practice but for Blue Cross choosing not to contract with her in 2014. As such, Blue Cross further asserts that Mr. Litolff's calculations were based upon nothing more than speculation and conjecture that would not be approved if subjected to peer review.
Dr. Darnell maintains that she presented sufficient evidence to support the trial court's awards for past and future losses. She avers that Mr. Litolff's testimony and report were uncontroverted, and Blue *515 Cross failed to discredit Mr. Litoff's methods and calculations at trial.
In reviewing a court's factual conclusions with regard to special damages, an appellate court must satisfy a two-step process based on the record as a whole: 1) there must be no reasonable factual basis for the trial court's conclusions, and 2) the finding must be clearly wrong. Sid-Mar's Rest. & Lounge, Inc. v. State , 15-326 (La. App. 5 Cir. 12/9/15), 182 So.3d 390, 401. A trial court may accept or reject, in whole or in part, the opinion expressed by an expert. Purvis v. Jefferson Par. Hosp. Serv. , 16-434 (La. App. 5 Cir. 12/21/16), 209 So.3d 363, 377. "The effect and weight to be given to expert testimony [or report] is within the broad discretion of the trial judge." Sid-Mar's Rest. & Lounge, Inc., supra , quoting Phillip Family L.L.C. v. Bayou Fleet P'ship , 12-565 (La. App. 5 Cir. 2/21/13), 110 So.3d 1158, 1167.
In the case at bar, Mr. Litolff was admitted as an expert in economics and certified public accounting. He generated an expert report to render his professional opinion with respect to the economic losses sustained by Dr. Darnell resulting from the instant dispute. The primary documents relied upon for the report were tax returns for Dr. Darnell's medical practice. The report noted that Dr. Darnell was interviewed with respect to her past earnings levels, and she had taken significant time away from her practice from 2000 through 2003 due to her husband's illness. Mr. Litolff testified that he performed a "But For Analysis" to determine how to put the injured party, Dr. Darnell, in the same position she would have been if the alleged wrongful event had not happened. In his report, the loss period commencement date was set as January 1, 2013. In Scenario I, Mr. Litolff estimated that Dr. Darnell's remaining work life expectancy, as of the loss period commencement date, was approximately 4.8 years, spanning the loss period from January 1, 2013 through October 20, 2017.
For purposes of the loss calculations, activity from 2003 through 2012 was omitted, and an expected annual earnings level was established. Mr. Litolff explained at trial that he reviewed those years but omitted them from his calculations because it was his understanding that another legal issue covered certain time periods. He further explained that he would have considered certain time periods if those years were not hampered or were unrestricted by any limitations in Dr. Darnell's practice. When questioned by Blue Cross' counsel about statistics he used or studies he conducted for his methodology that would have been acceptable in a peer review, Mr. Litolff responded that he used an assumption, instead of statistics, and did not conduct any studies because writing a peer review is different from generating an expert report. No further questions regarding the standard of a peer review versus an expert report were asked.
The expected annual earnings for the benchmark income for Dr. Darnell was approximated at $72,371, which was opined to be extremely conservative for a gynecologist in the New Orleans area. The report stated that the adjusted ordinary income for Dr. Darnell from the year 2016 through assumed work life expectancy was set at zero, based upon the assumption she was unable to generate profits through her practice since she was no longer an "in-network" provider with Blue Cross. The report concluded in Scenario I that Dr. Darnell's past loss was $325,261, and her future loss would be $49,371, for a total loss of $374,632.
The trial court awarded Dr. Darnell $325,261 for past loss and $49,371 for future loss. In its "Reasons for Judgment,"
*516 the trial court adopted Scenario I from Mr. Litolff's report in determining damages. At trial, Mr. Litolff explained the methodology used in his report and exactly what documentation he used for his calculations. Although Blue Cross argues that Dr. Darnell's practice had dwindled to nothing and she had no legally supportable claim against it for lost earnings in 2013 or any subsequent year, it failed to present any evidence at trial that would refute the methodology used in Mr. Litolff's report or assist the trial judge with an alternative method for determining the amount of Dr. Darnell's past or future losses. Because Blue Cross failed to controvert Mr. Litolff's report, we cannot find the trial court erred in adopting the report and rendering the amounts of its awards for past and future losses based upon the report.
DECREE
For the foregoing reasons, we affirm the June 30, 2017 judgment in favor of Joanell M. Darnell, M.D. and against Louisiana Health Service & Indemnity Company d/b/a Blue Cross Blue Shield of Louisiana. Louisiana Health Service & Indemnity Company d/b/a Blue Cross Blue Shield of Louisiana is to bear the costs for this appeal.
AFFIRMED

In its appellate brief, Blue Cross stated that it would file an exception of res judicata , separate from its appellate brief, to address Dr. Darnell's offer and acceptance theory because that theory was not advanced to the trial court by Dr. Darnell until after the case had been submitted. An appellate court may consider a peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record. La. C.C.P. art. 2163. However, Blue Cross did not plead and argue the application of res judicata to the offer and acceptance theory with this Court; thus, it will not be addressed in this opinion.

Although Blue Cross alleges the trial court erred in overruling its peremptory exception of no cause of action, its brief essentially focuses on the trial court's ruling on the exception of res judicata . Therefore, our review will focus on the arguments provided in Blue Cross' brief. See , Uniform Rules - Courts of Appeal, Rule 2-12.4(B)(4).

We note that, despite raising the trial court erred in overruling the exception of res judicata as an assignment of error, Blue Cross acknowledged the instant action is not precluded by res judicata by stating the following in its appellate brief:
In her "Petition for Declaratory Judgment and for Damages, Plaintiff referenced her previous lawsuit and the fact that it was settled in 2013 for a substantial sum. Furthermore, Plaintiff referred to a number of matters that were in the focus of the earlier lawsuit. However, apparently recognizing the res judicata effect of the previous Settlement Agreement, Receipt and Release and the Dismissal with prejudice, Plaintiff set forth theories of recovery that arose subsequently to the settlement of her previous lawsuit ....(Emphasis added) (Footnotes in the original omitted).

Assignments of error numbers three and five will be discussed jointly because they are interrelated.

It is unclear from the testimony exactly when Mr. Groves was promoted to Vice President.

During Dr. Darnell's cross-examination, it was elicited by counsel for Blue Cross that the meeting occurred in 2003.

Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings, and the latter contains no prayer for general and equitable relief. La. C.C.P. art. 862. It is well-established that Louisiana is a fact-pleading state. Reynolds v. Brown , 11-525 (La. App. 5 Cir. 12/28/11), 84 So.3d 655, 658-59.
The theory of the case doctrine, under which a party must select a theory of his case or defense and adhere to it throughout the litigation, was abolished. Solis v. NPK, LLC , (La. App. 5 Cir. 3/29/11), 63 So.3d 236, 238, writ denied , 11-1094 (La. 9/16/11), 69 So.3d 1145. A party must set forth the facts surrounding the cause of action but is not required to assert all theories of recovery. Id. Courts should construe pleadings so as to achieve substantial justice and, in order to reach the truth, should avoid the application of harsh, technical rules of pleading. Id. "As long as the facts constituting the claim are alleged, the party may be granted any relief to which he is entitled under the pleadings and the evidence...." Trust for Schwegmann v. Schwegmann Family Trust , 05-95 (La. App. 5 Cir. 5/31/05), 905 So.2d 1143, 1147, quoting First South Production Credit Ass'n v. Georgia-Pacific , 585 So.2d 545, 548 (La. 1991).